Hall *v.* Carmichael.

## HALL *v.* CARMICHAEL.

HUSBAND AND WIFE. *Conveyance of property by wife before marriage in fraud of marital rights of the husband.* A conveyance by a woman before marriage, and pending negotiations of marriage, of her property, made secretly and upon inadequate consideration, will be set aside by a court of equity, upon the application of the husband, as a fraud upon his marital rights. The settled rule in this State is, that every such transaction by a woman pending a treaty of marriage is not necessarily fraudulent and void, because the intended husband was not a party or privy thereto, but that each case must be judged by its own circumstances.

Case cited: Lawden *v.* Harris, 1 Head, 203.

FROM LOUDON.

Appeal from the Chancery Court. O. P. TEMPLE Chancellor.

---

Hall *v.* Carmichael.

---

ROGERS & WELCKER for plaintiff.

No counsel marked for defendant.

SNEED, J., delivered the opinion of the court.

The bill charges that the complainant became the husband of the defendant, Louisa G. Carmichael, on the third day of September, 1871, after a contract of engagement of ten months previous, and that on the second day of the same month and year the said Louisa sold and conveyed a considerable estate of which she was the sole owner, to the defendant, J. F. Carmichael, by title bond, without notice to complainant, which the bill charges was a fraud upon the marital right of the complainant, and therefore void. The bill prays that the sale be set aside, and that the complainant be put into possession of the property in right of the marriage. The Chancellor granted the relief, and the defendant, Carmichael, has appealed. The theory of the complainant's case is, that the defendant, Carmichael, being the brother-in-law of the defendant, Louisa, and having at the time her implicit confidence, by undue influence and impetuosity induced her to sell her estate to him, to conceal the fact from the complainant, and thus get possession of the estate. It appears that at the time of the transaction Carmichael was living with the defendant Louisa, who had for several years been the widow of his brother; that he had the supreme control of her farm and stock, superintending the cultivation of said farm, and the raising and sale of the stock, thereby sup-

porting himself and family as well as the said Louisa and her children; and that in all things touching the management of her affairs, she was guided and governed by his advice. The complainant and the said Louisa, on the said second day of September, had been under contract of marriage for about ten months, and the fact of betrothal was well known to defendant Carmichael. The defendants, Carmichael and Louisa, resided on the farm of the said Louisa in the county of Loudon, and in the neighborhood of the complainant. The defendant, Carmichael, had gone into bankruptcy, and the proceedings for his discharge were pending at the time of the sale, and were consummated by his discharge some time afterward. A few days before the marriage the contract of sale was agreed upon between the parties, and on said second of September, 1871, the two defendants came to the city of Knoxville, where the terms were reduced to writing and signed by the defendant, Louisa. On the first of February, 1872, several months after the marriage, the defendant, Carmichael, caused the title bond to be registered. The complainant was kept in ignorance of all these transactions until some time after the marriage. The land thus sold was worth, as we estimate it from the weight of the proof, between fifteen and twenty thousand dollars, and the personalty about three or four thousand dollars. The conditions of the sale on the part of defendant Carmichael were, that he was to assume and pay the debts of the said Louisa, estimated by him to be about eight thousand dollars, but the amount not ascertained, and pay the

defendant Louisa eight thousand dollars in money—three thousand of which to be paid to her, and evidenced by a note due — day of ——, 1876, and the other five thousand to be paid in equal amounts to the two children of the said Louisa, and to be secured by his promissory notes, to be made to the guardian of said children whenever a guardian should be appointed. The article of agreement or title bond is only signed by the defendant, Louisa, and the only paper by which the defendant Carmichael is charged is the said promissory note of three thousand dollars, so executed and payable as aforesaid on the — day of ——, 1876. The answer of defendant Louisa admits the facts as charged in the bill, and she files a cross bill in the cause in which she also seeks an avoidance of the contract for the same reasons alleged in the bill. The answer of defendant Carmichael admits the matters of fact as stated in the bill, but denies and disclaims the fraudulent purpose imputed, and asserts its perfect good faith. Without entering into a careful analysis of the proof, it is sufficient to say that in our opinion the theory of the bill is abundantly sustained by the undisputed facts of the case without reference to the deposition of the defendant Louisa, whose competency as a witness it is, in our opinion, not necessary to determine. The facts of the known existence of the contract of marriage, the secrecy of the sale, its purposed concealment from the complainant, the insolvency of the purchaser and the suspicious artifice and contrivance of the whole transaction, sufficiently appear from the other proof

Hall *v.* Carmichael.

and surroundings of the case, and the equities of the parties are clearly developed without the aid of the deposition referred to. Do the facts sustain the ruling of the Chancellor? We are of opinion that they do. An argument of much ability is predicated upon the fact that under the contract an ample provision is made for the children of the defendant Louisa, and that her betrothed husband, himself a man of good estate, while he takes her unencumbered with property, takes her also unencumbered with her debts. This argument might be of more force if the children were made absolutely secure of the alleged provision, and if the complainant was absolutely indemnified against liability for the debts of the wife, for which his liability began with the marriage, and will continue until discoverture. The creditors of the defendant, Louisa, were not consulted touching the arrangement, nor is there the slightest privity of obligation as between them and the defendant. On the other hand, the defendant, Carmichael, a bankrupt, has got possession of this large estate upon an indefinite parol promise to pay five thousand dollars at some indefinite time to the children, and a parol promise to pay vendor's debts at a period of time equally indefinite, and a written promise to pay the defendant, Louisa, three thousand dollars in 1876, and has thus put himself in a condition not only to use the rents and profits of the estate for his own advantage, and for a paltry consideration for an indefinite time, but to defy the creditors, and to throw the burthen of satisfying their demands upon the com-

plainant by the quick remedial energies of the law, to which the creditors have a right to resort upon the instant of the marriage, rather than the slow and dubious process of a court of equity to enforce a doubtful trust.

It seems to be settled by the adjudged cases in this State that every such transaction by a woman pending a treaty of marriage is not necessarily fraudulent and void because the intended husband was not a party or privy thereto, but that each case must be judged by its own circumstances. Thus if a conveyance be made by a woman in the discharge of the moral duty of providing for the children of a former marriage, it will not be considered as a fraud upon the intended husband, though it had been concealed from him. 1 Col., 409. And in *Jordan* v. *Black*, it was said that the meritorious object of the conveyance, or the situation of the intended husband in point of pecuniary means, would form exceptions to the rule. Whether there is fraud or not upon the marital rights, must depend upon the circumstances of each case, the conveyance of a married woman, though made immediately before marriage, being *prima facie* good. *Lawden* v. *Harris*, 1 Head, 203. In the case of *Logan* v. *Simmons*, 3 Red. Eq., 487, Ruffin, C. J., discusses this question with his wonted ability, tracing the doctrine down from the fountains of the English common law. The exact point adjudged in that case was that when a woman, who was about to be married, made a voluntary conveyance of all her valuable property, on the day before the marriage, without the

assent or knowledge of her intended husband to her son by a former marriage, and it was agreed that this conveyance should be kept secret. It was held that a court of equity would consider it a fraud upon the rights of the intended husband, and declare it void as to him. But the question, says Mr. Tapping Reeve, in all these cases is, was the husband deceived and disappointed? It seems to me, he adds, that such deception may be practiced by concealment. Reeve Dom. Rel., 284. The idea seems to pervade all the authorities that such a conveyance, though *prima facie* good, must be judged by its own particular surroundings, and that a purposed concealment is evidence of a purposed fraud. Thus said Lord Thurlow in the leading case of the courtship of *Strathmore* v. *Bowes,* "a conveyance by a wife, whatsoever be the circumstances, and even the moment before the marriage is *prima facie* good, and becomes bad only on the imputation of fraud. If a woman, during the course of a treaty of marriage with her, makes, without notice to her intended husband, a conveyance of any part of her property, I should, said Lord Thurlow, set it aside, though good *prima facie* because affected by fraud. 1 Ves. Jr., 22. The case in judgment, in our opinion, presents a stronger case for the application of the principle than either of those cited. And the principle itself is founded in the most enlightened sense of justice and right.

The complainant in this case was a man of substance, not shown to be an unsafe depository of the interests of his intended wife and her children. He

---

---

was bound for his wife's debts from the moment of the marriage, and so continued during the coverture. She might, by a debt contracted a moment before the marriage, have absorbed his whole estate. She is possessed of a good estate which, three days before the marriage, she has alienated to the defendant upon a consideration which seems to us shadowy and doubtful, and the fact is studiously concealed from him. Certainly such a case appeals strongly and eloquently to a court of equity.

Affirm the decree.