CLARENCE W. BARRON *vs.* INTERNATIONAL TRUST
COMPANY.

Suffolk.    November 9, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Contract*, Performance and breach.    *Evidence*, Burden of proof.

The defendant, a trust company, having underwritten a subscription for certain
bonds of a company to be formed by a combination of corporations, agreed to
pay the plaintiff for advertising the bonds in certain newspapers out of such
money, securities or subscriptions as might be paid in. After the plaintiff had
begun the advertising, the defendant obtained subscriptions for some of the
bonds, on which a payment of ten per cent was made; but the defendant, finding
that misrepresentations had been made as to the earning capacity of at least one
of the combining corporations, cancelled its underwriting contract and returned
to the subscribers the amounts respectively paid by them, without paying the
plaintiff's bill. *Held*, that the defendant never received any money out of which
the plaintiff's claim was payable, as, when the undertaking failed and no bonds
were to be issued, the money received for the proposed issue of bonds belonged
to the subscribers and the defendant rightly returned it to them.

There is a presumption of fact that men act honestly, and when fraud is invoked it
must be alleged and proved affirmatively by the party who relies upon it.

CONTRACT for the price of certain advertising alleged to have
been done by the plaintiff for the defendant. Writ in the
Supreme Judicial Court dated May 14, 1900.

The case was tried before *Loring*, J., who at the close of the
plaintiff's evidence ordered a verdict for the defendant. The
plaintiff alleged exceptions.

*S. L. Whipple*, for the plaintiff.

*R. M. Morse*, for the defendant.

BRALEY, J. This is an action of contract in which the plain-
tiff seeks to recover for money paid by him in advertising in
certain newspapers a proposed subscription for and sale of mort-
gage bonds to be issued by a corporation known as the Boston
Breweries Company of which the defendant was to be trustee
for the bondholders. The declaration contained three counts,
but the first and second become immaterial as the case was tried
on the third count, which in substance alleges that the defendant
being "interested in the promotion of a combination of corpora-
tions" desired to place the bonds on the market, and agreed with

and promised the plaintiff that if he would advertise the enterprise in certain newspapers it would pay him out of " such money or securities as might be paid to it, or such subscriptions as might be made thereafter to said securities ", and that subscriptions were made to the bonds and money paid on account thereon to the defendant, who has failed and neglected to pay the plaintiff.  After the plaintiff had begun to advertise the securities, the defendant under the terms of the agreement between it and the Boston Breweries Company obtained subscriptions for the bonds to the amount of $60,000, on which the several subscribers therefor paid ten per cent on a par value of $100 for each bond, and in this way the defendant received the sum of $6,300.  For reasons not necessary to be stated the undertaking did not prove financially successful.  No trust deed was ever executed or delivered to the International Trust Company, neither were any bonds prepared and engraved and " the subscription was a failure."  The underwriting agreement was cancelled by the defendant on the ground of " misrepresentations in the prospectus."  These misrepresentations related particularly to the earning capacity of the different breweries, it being claimed that the amount of the entire earnings had been greatly overstated.  After the cancellation of the agreement the money which had been paid to the defendant on account of subscriptions to the bonds was returned by it to the several subscribers.  A verdict having been returned for the defendant by order of the presiding justice, the case is here on exceptions to this ruling, by the plaintiff, as well as to the admission of certain evidence at the trial.

The questions raised are so closely connected that they may be considered together.  The relation of the parties to this suit is well stated in the closing language of the interview between the plaintiff and the president of the defendant when the contract was made.  " I said, ' If the money comes in you will pay me.' ' Certainly,' he said, ' I will pay you out of the money that comes in but I do not guarantee that any money will come in.' I said, ' That is satisfactory to me.' "  Plainly no promise was made by the defendant to pay the plaintiff absolutely but only on condition that payment was to be made out of such money, securities or subscriptions as might be paid in, and the plaintiff

now contends that as the defendant received an amount sufficient at least to pay his claim it is liable therefor. And if nothing further appeared this would be so. But the evidence offered by the defendant to show why the scheme failed was competent; and it cannot be successfully contended that upon the plaintiff showing that it had received the money the defendant is precluded from proving the cancellation of the underwriting agreement and abandonment of the undertaking, and thereby show that the condition under which the plaintiff could lawfully call upon it to pay had not arisen. All the parties who took part in the negotiations to put the enterprise through as well as the plaintiff who was fully informed of the relation of the defendant thereto must have understood that they were dealing with a combination whereby customers were to be secured for the bonds to be put on the market and that these bonds were to be prepared and issued in the usual way. When the final result of the subscription to the bonds was ascertained and the securities successfully floated, and not before, the promise to pay out of the money received therefrom would arise and become operative.

The money actually received was paid in by subscribers on the direct understanding that the whole undertaking would be consummated as represented; and it fairly may be inferred that none of those who subscribed would have done so on any other basis. When the defendant, ascertaining that misrepresentations had been made as to the earning capacity of at least one if not more of the various concerns which made up the Boston Breweries Company, refused to go on, and so notified the agent of the proposed combination, and cancelled the underwriting agreement, the money in its possession, received from subscribers for bonds that had not been and could not be issued, belonged to those who had paid it. They subscribed for bonds, and no bonds were ever sold and delivered, for the simple reason that the proposed combination went to pieces and there were no bonds to sell. And the object and purpose of the subscription having wholly failed, each was entitled to a return of the sum so paid. The temporary deposit made by subscribers was to insure good faith on their part and that they would take and pay for the bonds subscribed for by them, and cannot be regarded and treated as a fulfilment of all the conditions under which

the subscriptions were made, because each subscription was conditional upon the whole amount being taken and issued, or at least enough to make the issue of bonds a success ; and this view is in accordance with the terms of the offer made when they were placed on the market.   It can make no difference whether the amount repaid is treated as a trust fund to be returned to those who paid it on the express understanding that bonds were to be issued therefor, or as money received on account which the defendant might mingle with its funds, and use for general business purposes.   In either way it had received money which in equity and good conscience must be paid back, if the bonds could not be issued.   *Kelly* v. *Beede,* 141 Mass. 184.

Nor can the force of this understanding, arising from the whole plan to float the bonds and the general situation of the parties and their relation to the subject matter, be successfully met by the argument of the plaintiff that a jury might find that the cancellation of the agreement by the International Trust Company was fraudulent as against the plaintiff and not made in good faith.   It would be enough to dispose of the position taken to say that the declaration on which the plaintiff relies alleges performance of the contract, and not a breach of it by the defendant.   But, if this had been cured by an amendment at the trial, the plaintiff must have failed to maintain his contention.

The evidence as to the cancellation of the underwriting agreement was given on cross-examination by the president of the defendant company, a witness called by the plaintiff, and against whom no claim was then, or is now made, that he was untruthful or under any bias or prejudice in the case.   Not only is fraud never presumed, but it must be affirmatively alleged and proved by the party who relies upon it, either for the purpose of attack or defence.   And nothing appears in the evidence recited in the record to show want of good faith by the defendant.   If the plaintiff in order to avoid the effect of this evidence sought to charge the defendant or its officers with fraudulent conduct it became his duty to so allege and offer some affirmative proof to overcome the presumption of fact that they had acted honestly. *Hatch* v. *Bayley,* 12 Cush. 27, 30.   *Beatty* v. *Fishel,* 100 Mass. 448.   *Wood* v. *Massachusetts Mutual Accident Association,* 174 Mass. 217, 221.

He failed so to do. And as the case stood at the close of the evidence the plaintiff had not proved that the defendant had received any money under the terms of the agreement declared on, and the verdict was ordered rightly in its favor.

*Exceptions overruled.*