ELLENOR E. BELL, Appellant, v. CHARITY DUFUR ET AL.

ELLENOR E. BELL, Appellant, v. U. M. BELL ET AL.

ELLENOR E. BELL, Appellant, v. H. V. BELL.

**Husband and wife:** TRANSFER OF PROPERTY BEFORE MARRIAGE: FRAUD: BURDEN OF PROOF: EVIDENCE. A conveyance of property secretly made by the husband pending a treaty of marriage, which operates to deprive the wife of her dower interest in the property that she would otherwise have acquired by the marriage, is constructively fraudulent as to her; but in seeking to set the conveyance aside the wife has the burden of establishing her want of knowledge of the conveyance, and her reliance upon her prospective rights in the property as an inducement to the marriage. Evidence held insufficient to show that fraud was practiced upon the wife in the instant case.

Appeal from Clarke District Court.—HON. H. M. TOWNER, Judge.

WEDNESDAY, JUNE 2, 1909.

ACTIONS in equity to set aside conveyances of real estate from William Bell, the deceased husband of the plaintiff, to each of three children by a former marriage, and subject the three parcels of land covered by said conveyances to her claim for dower therein; the allegation of ground for such relief being that said conveyances were

made shortly before plaintiff's marriage to said William Bell, and without her knowledge, and in fraud of the rights which she was induced to believe she would acquire by such marriage. After a hearing upon the merits the court entered a decree in each case for the defendant, and the plaintiff in each case appeals.—*Affirmed*.

*V. R. McGinnis, O. M. Slaymaker* and *J. S. Banker,* for appellant.

*Maxwell & Maxwell, Temple & Temple,* and *W. B. Tallman,* for appellees.

McClain, J.—The plaintiff and William Bell were married on July 2, 1902, in Clarke County, after a courtship of not exceeding two months. William Bell was then eighty years of age, and for two years a widower, and plaintiff was a widow forty-seven years of age, with two minor children. At the date of the commencement of this courtship William Bell was the owner of about three hundred acres of land in Clarke County of the value of about $15,000, which value had, at the time of the trial of the case in 1908, increased to about $25,000. On June 23, 1902, nine days before the marriage, William Bell conveyed this land in three parcels, by warranty deeds, to his three adult children by his former marriage, defendants in these actions, without other consideration than that of love and affection. Two of the deeds were at once recorded in Clarke County, but the third, to a grantee residing in Nebraska, was first forwarded to such grantee, and then returned for record, and recorded on the day of the wedding. Concurrently with the execution and delivery of these three deeds three instruments of lease were executed by the grantees in the deeds to the grantor for the same premises described in the deeds, granting to said William Bell the premises described for a period of twenty

years, to terminate, however, on his death, should he die before the expiration of that time, with the agreement on his part that he pay all taxes thereon, and keep the fences and buildings in proper repair; he to have full control and use of said land and buildings to occupy or rent the same as he might deem best during the continuance of the lease. These instruments of lease were not recorded.   William Bell died in March, 1907, and on the 20th day of July following these actions were brought, in which plaintiff asks to have the deeds declared fraudulent as against her, and to secure the setting apart to her of one-third in each of said tracts by way of dower.

There is little evidence directly tending to show intentional fraud on the part of William Bell in making these voluntary conveyances, or on the part of the grantees in accepting them, so far as the prospective rights of plaintiff were concerned. . On the other hand, there is evidence, practically uncontroverted of an understanding existing between William Bell and his former wife prior to her death and these three children, that some such distribution of his property should be made.   But, if without plaintiff's knowledge such conveyances were made pending a treaty of marriage between plaintiff and William Bell, they were no doubt constructively fraudulent as to her, and should be set aside, so far as they deprived her of the contingent dower interest in the property which she would have otherwise acquired by the marriage.   *Wallace v. Wallace,* 137 Iowa, 169; *Beechley v. Beechley,* 134 Iowa, 75.   Nevertheless the burden is on the plaintiff to establish such fraud—that is, the want of knowledge on her part, and her reliance on the prospective rights in the property to be acquired by the marriage relied upon as an inducement thereto—and, as we view the evidence, the determination of this issue depends upon the proof of want of knowledge by plaintiff of the conveyances; it appearing without controversy that plaintiff knew that the property belonged to

deceased when the courtship commenced, and that during its progress some reference was made by both parties to the nature and extent of the property of the prospective husband. Plaintiff, as a witness, testifies to the want of any knowledge whatever of the conveyances executed on the 23d of June preceding the wedding; that during the courtship her prospective husband stated that he would have plenty of property and plaintiff would never have to work for the support of herself and minor children as she had previously done, and that he proposed to take her to see this property, which, however, he did not in fact do. She also testifies that on the day before the marriage she heard from Mrs. Stevenson, at whose home William Bell was then residing, that he had deeded his land away, and that plaintiff told her to tell Mr. Bell to come over, as she wanted to see him; and, on his coming to see her, she asked him if he had put his land out of his hands, to which he replied that he had not done so, and that it was the same as it had always been, and, further, that the same statements were made to her by Mr. Bell on that evening at the home of Mrs. Stevenson, when Bell assured her that the land was as formerly, and she says that she believed what he said. Statements to the same effect are testified to by plaintiff's son, as having been made to him on the same day by Bell in order to dissuade him from opposition to his mother's marriage, and he says these statements were repeated by him to his mother. Mrs. Stevenson, as a witness, corroborates plaintiff as to the conversation between her and Bell the evening before the marriage, when, as she says, plaintiff told Bell: "I will take care of you, but if you deed your land and everything away that you have, I can't. I could not take care of you without I had something to do it with" whereupon Mr. Bell said "that it was not so; that he had not deeded his land away. It was just as it always had been, and that he did not intend to deed it away, but was going to

leave it to her afterwards, and he asked her who told her, and she did not speak up, and I did, and told him that I had told her." The same witness testifies that after the marriage she asked Bell about having deeded the property away, and whether Mrs. Bell knew that fact, and he replied: "No; and you need not tell her." John Stevenson, the husband of the witness last above referred to, testified that after the marriage he had a conversation with Bell about his having deeded his land to his children, and the latter stated what he had in fact done, but said: "It won't change my income. I am to have the income from this land during my lifetime. . . . The income from the farm will be ours just the same as it always has been." From this testimony it is apparent that plaintiff was told by Mrs. Stevenson prior to the marriage that her prospective husband had deeded his land away, and that she made inquiry of him with reference to that fact, but her claim is that, on his assurance that the land remained his as before, she entered into the marriage, believing what he said as against the statement of Mrs. Stevenson. She further testifies that she would never have married him if she had known that he had deeded his land away.

However, in September, 1906, plaintiff instituted an action against her husband for a divorce, alleging that among other inducements and arguments to persuade and influence her to consent to marry him, he had represented to her the advantage to come to her in accepting him as a husband in his large property wealth and his large real estate holdings, all of which he stated would render her comfortable and independent for life, and provide her with a home and comfortable surroundings, stating that he represented to her that he owned over three hundred acres of valuable farm land, which she would enjoy with him as his wife, and in which she would have a life interest, and that this was the inducement which caused her to marry him, and, further, that since her marriage she had dis-

covered that, fraudulently as to her, and for the purpose of cheating, wronging and defrauding her, a short time before their marriage he had secretly, and without her knowledge, made deeds of transfer to all his said land to his children by a former marriage; and plaintiff alleged in this petition that the said deeds were made without the plaintiff's consent or knowledge, and for the express purpose of defrauding her of her rights under the marriage, and prayed a divorce, and that the deeds be set aside, and that she be awarded $10,000 alimony, which should be decreed to be a lien upon all of the real estate thus conveyed. Immediately on the institution of this action for divorce a somewhat sensational statement of the grounds alleged therefor, emphasizing the charges of intentional fraud against the husband, was made in a newspaper published in the county, whereupon the husband, as testified by one Miller, who had prepared the instruments of conveyance and lease, came to him and showed him the newspaper publication, and expressed himself as greatly grieved at the imputation of fraud and bad faith. Miller promised to secure for him a copy of the petition for a divorce, and subsequently, as he testifies, both Mr. and Mrs. Bell came to his office, when he read the petition over to them, and Mrs. Bell said that there was not a word of truth in those allegations, that she did not have her glasses when she signed the petition, and did not read it, and that she and her husband had talked the matter all over before they were married, and the arrangement was satisfactory. Further, at Miller's suggestion, as he testifies, Squire Flinn, who had an adjoining office, was called in to assist in explaining the situation to plaintiff, and in his presence, after the allegations of the petition in regard to her husband's fraud had been again read, she stated that "there is not a word of truth in that about the land. I knew all about that before I was married, and I want the divorce case settled up and paid off." Thereupon a written dismissal of the

action was drawn up by Miller, and Flinn, acting on the authority conferred in such instrument, had the case dismissed for plaintiff. Squire Flinn, as a witness, corroborated Miller's testimony so far as it related to his connection with the divorce case and the statements of plaintiff in his presence, and further testified that, under plaintiff's authority, he went to the county seat and procured the divorce suit to be dismissed. Witness Miller further testifies to a subsequent conversation with plaintiff and her husband, occurring after they were again living together, in which there was some question in regard to the terms of a will made by Bell, in the course of which conversation plaintiff again said there was not a word of truth in the statements of the newspaper article that she did not know the land was deeded away before the marriage. Plaintiff, testifying in rebuttal, admits some conversation in the presence of Miller and Flinn, but denies that she had stated she knew about the conveyance of the property before the marriage, insisting that her statement was only as to such knowledge after the marriage.

We have set out the substance of all the testimony bearing upon the question whether plaintiff had information prior to the marriage that William Bell had in some manner disposed of his land to his children, and relied upon his continuing to be the full owner of the land as an inducement to the marriage, and we reach the conclusion that plaintiff has not, by a preponderance of the evidence, made out a case of even constructive fraud. If the reasonableness of the arrangement made by William Bell with his children can be taken into account as bearing upon the truthfulness of the testimony of plaintiff that she would not have married him had she known of this arrangement, it is to be borne in mind that, without property of her own, and with two minor children to support by manual labor, and also without any probability of other marriage, for she was already forty-seven years of age, she

contracted marriage with a man who, for the remainder of his life, was to have the rents and profits of three hundred acres of farm land, and who had at the time, as the evidence shows,, $1,600 in money and a life insurance of $1,000, which was subsequently added to his personal estate. It further appears that plaintiff accepted the provisions of her husband's will in her behalf, by which she became the absolute owner of a small homestead of the value of $800 or $900, and received one-fourth of his personalty and the household furniture and a few domestic animals.

On the merits of the whole case, we can not see how the trial judge could well have reached any other conclusion than that announced in the decree, and the decree is therefore *affirmed*.