### MORENO–BURKHAM CONST. CO. v. BURGAUER et al.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1923.)

No. 6172.

**Municipal corporations ⊗═352—Sale of bonds by paving district held condition precedent in contract for paving.**

Plaintiff contracted with defendant, a municipal paving district, for construction of certain pavement, for which it was to be paid in cash; the contract providing that it should begin work within 15 days "from the date of receipt of notice that the commissioners of said district have sold the bonds of said district and have in hand funds with which to pay contractor's monthly estimates." Owing to a question to the construction of the statute authorizing issuance of the bonds, the com-

---

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

missioners were unable to sell the same, though they made diligent effort. *Held*, that the sale of the bonds was a condition precedent in the contract, and that defendant was not chargeable with its breach.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action at law by the Moreno-Burkham Construction Company against D. Burgauer and others, Commissioners of Street Improvement District No. 44 of the City of Hot Springs, Ark. Judgment for defendants, and plaintiff brings error. Affirmed.

Cockrill & Armistead and John W. Newman, all of Little Rock, Ark., for plaintiff in error.

Martin, Wootton & Martin, of Hot Springs, Ark., for defendants in error.

Before STONE, Circuit Judge, and BOOTH and JOHNSON, District Judges.

JOHNSON, District Judge. District No. 44 of the city of Hot Springs, Ark., is a local improvement district organized under the general laws of the state for the purpose of paving certain streets in the city. Plaintiff is a construction company, with its principal place of business at St. Louis, Mo., engaged in the business of street paving. On the 3d day of May, 1920, plaintiff was awarded the contract by the commissioners of the district for the proposed street paving. The provisions of the contract material here are the following:

The construction company agreed, in consideration of the payments to be made as set forth in the contract, to furnish all tools, labor, equipment, and material, and construct all the street paving and improvements in the said improvement district No. 44 in accordance with the plans and specifications attached to the contract. The district agreed to pay for the work at the unit prices named in the bid of the construction company, "such payment to be made in lawful money of the United States and the payment shall be made at the time and in the manner set forth in the specifications." The construction company agreed to begin work within 15 days "from the date of the receipt of notice that the commissioners of said district have sold the bonds of said district, and have in hand funds with which to pay contractor's monthly estimates."

On June 1st the Citizens' National Bank of Hot Springs offered to purchase the improvement bonds of the district, provided the legality of the bond issue was approved by the bank's attorneys. On June 4th plaintiff was notified by the district that the bonds had been sold to the Citizens' National Bank, provided their validity was approved by the bank's attorneys. On June 22d the chairman of the board of commissioners of the district wrote plaintiff that the district had received information that some defects must be cured in the organization of the district, and asked for an extension of time within which to have the bonds approved. On September 23d the president of plaintiff wrote the chairman of the board as follows:

"You will recall that the last time we discussed this matter at Hot Springs, just before you started on your summer vacation, I agreed to de-

fer the starting of this work until September 1, as you thought that would give you ample time to get all necessary work done, to sell your bonds, etc., and give us instructions to go ahead with the work. If you are not yet ready to proceed with this work, I think it only fair that you should return to us the bond that we filed with your company at the time of the signing of the contract, as said bond costs us about $112 a month. * * * If you do this, we shall be glad to file a new bond when you are ready for us to proceed with the work. Trusting, however, that you have matters in shape by this time, and that the money is available to pay for the work according to the terms of our contract, I am," etc.

In reply to this letter the chairman of the board on the 25th of September wrote plaintiff that "the work should commence at a very early date, possibly at the end of two weeks"; that the commissioners were doing "all in their power to hurry the matter along"; that "the delay was caused by the assessors," and the absence of the bank's attorney from the city, and also by the failure of the clerk to advertise the assessment list as required by law. The letter ended with the statement:

"If no irregularities are proved within the 10 days, we will probably get word from the attorneys in Little Rock that the bonds will be approved, and when such notice is received we will give you immediate notice to proceed."

On November 19th the attorneys of the bank notified the district that they were unable "to forecast with a reasonable degree of certainty just what the Supreme Court would hold is the proper construction of section 3" of the act under which the district was organized, and, "this being the case, we will be unable to approve the bonds of this district until the Supreme Court has considered the question and got it at rest by construing the quoted provision of section 3 in connection with the other provisions of the act." Plaintiff was immediately advised that the bank's attorneys had refused to approve the bonds, and on the 1st of December the chairman of the board wrote plaintiff:

"I know of nothing more the commissioners can do, as it seems it will require a Supreme Court decision to get the bonds approved, and you would not want to proceed with the work unless the bonds were sold. If there is any action taken, it must be done by some one other than the commissioners, as they cannot institute suit against themselves in order to get the matter before the courts."

Early in January, 1921, the commissioners notified the plaintiff that they could proceed no further, and that the contract would not be performed because of their inability to do so. It is stipulated in the agreed statement of facts that the Citizens' National Bank refused to purchase the bonds because of the opinion of its attorneys, and that the commissioners of the district "made diligent efforts to dispose of the bonds elsewhere, and were unable to do so, and have never sold the bonds or received any proceeds therefrom."

The action was submitted to the trial court upon the agreed statement of facts and the pleadings, with a stipulation that, if the court found the issues in favor of plaintiff, the plaintiff should then submit evidence on its claim for damages. The court found the issues in favor

of the district and dismissed the suit.    Plaintiff has brought the case
to this court by writ of error.

Plaintiff in error contends the judgment should be reversed because:

"* * * The wording of the contract and the subsequent acts and
declarations of the parties under it show clearly and definitely that it was
intended by the contract to bind the commissioners absolutely to sell the
bonds and get the money to perform their contract. * * * They [com-
missioners] seek to excuse themselves by saying they tried to sell, but did
not make a sale. The agreed statement precludes them from saying they
could not sell. They saw fit to accept a conditional offer of purchase,
and then abandoned all efforts to meet the conditions. These conditions
might have easily been met, or at least it might have easily been deter-
mined whether or not they could be met. The attorneys did not say the
bonds were invalid. They merely said they could not approve them until
the meaning of certain language in the statute be construed by the Supreme
Court or explained and made clear by an act of the Legislature."

The alternative in respect to an act of the Legislature was not the
suggestion of the attorneys, but of Mr. Fordyce, the engineer of the
district. It is the contention of the district that the sale of the bonds
was a condition precedent in the contract; that the performance of the
contract was conditioned upon the sale of the bonds.

We agree with the contention of the district. The district was
organized for one specific purpose—the improvement of the streets
included in the district. Like all improvement districts, it had    no
funds, and no means of securing funds, with which to pay for the
work stipulated in the contract, except by the levy and collection of
special taxes as provided by law, or by the sale of bonds of the district.
The contract provided that the work should be completed within 120
days from the date of the receipt of notice that the bonds of the dis-
trict had been sold and funds were available to pay monthly estimates.
Without doubt, the parties contemplated a sale of the bonds to meet
the cost of the improvements, and plaintiff protected itself against an
unconditional agreement to perform by the stipulation that it would
begin work within 15 days after the receipt of notice that the bonds had
been sold and the commissioners had money in hand with which to pay
for the work as it progressed. Throughout their correspondence the
parties assumed that it was necessary to sell the bonds before plaintiff
would begin the work. In his letter of December 1st the chairman of
the board writes: "You would not want to proceed with the work
unless the bonds were sold." To this suggestion plaintiff made no
reply. It was understood when the contract was entered into that
bonds were to be issued and sold in the usual way, and we are con-
vinced it was also understood that when the bonds were sold and the
proceeds in hand, and not before, the promise to pay would arise and
become operative. Barron v. International Trust Co., 184 Mass. 440,
68 N. E. 831; Arment v. Yamhill County, 28 Or. 474, 43 Pac. 653;
Cavanagh v. Iowa Beer Co., 136 Iowa, 236, 113 N. W. 856; 13 C. J.,
Title Contracts, secs. 532, 698, 701.

The agreed statement of facts recites that "the defendants made dili-
gent efforts to dispose of the bonds elsewhere, and were unable to do
so, and have never sold the bonds or received any proceeds therefrom."
When the commissioners made diligent efforts to dispose of the bonds

elsewhere after the bank had refused to take them, they did all they were required to do. As stated by the chairman of the board in his letter of December 1st, the commissioners could not institute suit against themselves in order to get the matter before the Supreme Court (Tregea v. Modesto Irrigation District, 164 U. S. 179, 17 Sup. Ct. 52, 41 L. Ed. 395), and certainly they were under no obligation to attempt to lobby a bill through the Legislature for the purpose of curing defects in the original act.

The judgment of the court below was right, and is affirmed.