ANTHONY GEDART & another *vs.* PAULINE EJDRYGIEWICZ.

Middlesex.   November 7, 1939. — February 14, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Mortgage,* Of real estate: validity. *Fraud. Husband and Wife. Equity Jurisdiction,* To relieve from the results of fraud.

A husband, individually and as administrator of the estate of his wife, was entitled to relief against a voluntary note and mortgage of real estate given by her three days before her marriage unknown by him and made with intent to defeat any interest in her estate that he might acquire by the marriage, such note and mortgage being fraudulent as to him although the grantee was a daughter of the wife by a former marriage.

BILL IN EQUITY, filed in the Superior Court on February 13, 1939, and afterwards amended.

The suit was heard by *O'Connell,* J.

*A. O. Shallna,* for the plaintiffs.

*F. J. Bagocius,* for the defendant, submitted a brief.

DOLAN, J.   This is a suit in equity in which the plaintiff prays to have a mortgage of certain real estate, of which the defendant is the holder of record, decreed to be fraudulent, void and without consideration, that the mortgage be cancelled, and that the defendant be ordered to deliver to the plaintiff a discharge thereof. The evidence is reported but the judge made no finding of material facts. The case comes before us upon the plaintiff's appeal from the final decree dismissing the bill.

The evidence discloses that on February 22, 1935, the plaintiff married one Alice Narkevich, the mother of the

defendant by a former marriage. The plaintiff had not been previously married, and had been more or less steadily employed for about twenty-seven years. He had known his wife for about three or four months prior to his marriage to her. Shortly after he met her he examined the real estate involved of which she was then the owner. She was present at that time. Then and up to within two days of the marriage she had assured the plaintiff that the property involved was "all pay up." It was their mutual understanding that in case of death each would leave the other what he or she had. She told the plaintiff the property was "all clear." Following the marriage the plaintiff built a two-car garage on the premises at a cost of about $700, and caused repairs to be made to the house at an aggregate cost to him of about $170. He gave his wife the money to pay the bills for insurance of the premises and the taxes thereon. His wife died on or about December 22, 1938, still being the owner of record of the premises and leaving as her heirs at law her husband (the plaintiff), her daughter (the defendant), and two sons. All of her children were by her former marriage. The plaintiff was appointed administrator of her estate, and sues also in that capacity. The inference is that the deceased died intestate. The younger son continued to live with the plaintiff after the death of his mother and was still living with him at the time of the trial in the court below.

It appears, however, that on February 19, 1935, the deceased, in company with the defendant, called upon an attorney at law who is counsel for the defendant in this proceeding. The deceased then executed a note for $3,000 payable to the defendant and a mortgage of the real estate to secure its payment. The note was payable in one year with interest at six per cent. The value of the real estate is "about fifteen, eighteen hundred dollars at the best." The defendant indorsed her name on the back of the note, and the attorney then took all the papers, recorded the mortgage on February 21, 1935, and retained the note and the mortgage when returned from the registry of deeds. They remained in his custody "subject to the orders of

either or both of them" until after the death of the deceased. The purpose of having the daughter indorse the note was "In case the daughter would predecease the mother that the mortgage note should be surrendered to the mother." The judge observed, "That wouldn't take care of the title," and the attorney, who had been requested by the judge to testify as a witness, then said: "A discharge or assignment of that mortgage, I do not know. I was looking through my papers, apparently I must have stuck them in some other envelope, the discharge or assignment. I don't recall now. She left them in my possession subject to the orders and instructions of the mother and . . . [the defendant]." He was positive that a discharge or assignment had been drawn up by him.

In instructing the attorney to prepare the note and mortgage the deceased said: "I contemplate to get married and I want to protect my children, because the man I am expecting to marry apparently prefers the property more than me." The defendant testified that the deceased "wanted" her to have the mortgage because the plaintiff "wasn't marrying the . . . [deceased], he was marrying for the property." She "wanted" the defendant to have the property if she, the deceased, married and died, because the defendant had "worked for it." She told the defendant that the mortgage was to run until she, the deceased, died. The defendant was born in 1904. The defendant never received any interest on the note. From the age of fourteen years and until her marriage she had given her earnings to the deceased. After the marriage of the defendant she contributed to the support of the deceased to some extent, but made no contribution thereto after the marriage of the deceased to the plaintiff. The defendant paid the funeral expenses of the deceased out of the sum of $1,190 which the defendant received from insurance on the life of the deceased. There are bills "for the hospital" where she died and "for the doctor." There was evidence that the deceased wanted to protect her daughter who "has been supporting me for years."

Sometime after the death of the deceased the defendant

visited the attorney who had drawn the note and mortgage; he "pulled out the papers after instructions from her and proceeded with foreclosure, and after the advertising, as a matter of courtesy . . . sent registered letter with the notice." This notice was received by the plaintiff on January 28, 1939. This was the first time that the plaintiff learned there was a mortgage on the premises involved. The notice stated that there was to be a foreclosure sale of the premises on February 17, 1939.

The evidence being reported, questions of fact as well as of law are brought before this court whose duty it is to examine the evidence and decide the case according to its judgment. Unless it is plainly wrong the decision of the judge will not be reversed. *Kelly* v. *Burlingame,* 269 Mass. 122, 123.

A careful examination of the evidence satisfies us that the plaintiff is entitled to the relief he seeks, and that the action of the judge in dismissing the bill was erroneous.

We are of opinion that upon all the evidence it must be found that the note and mortgage were executed by the deceased unknown to the plaintiff, on the eve of her marriage to him, with a deliberate purpose of defeating the interest in her estate that he would acquire by the marriage. It is settled that "a voluntary conveyance by a man, on the eve of marriage, unknown to the intended wife and made for the purpose of defeating the interest which she would acquire in his estate by the marriage, is fraudulent as against her." *Smith* v. *Smith,* 2 Halst. Eq. 515, 522. *Kavanaugh* v. *Kavanaugh,* 279 Mass. 238, 240. See *Deke* v. *Huenkemeier,* 289 Ill. 148, 155; *Bookout* v. *Bookout,* 150 Ind. 63, 66; *Bell* v. *Dufur,* 142 Iowa, 701, 703. The same rule applies where the conveyance is made by the woman. *Collins* v. *Collins,* 98 Md. 473, 477. *West* v. *West,* 120 Ark. 500, 504. *Dunbar* v. *Dunbar,* 254 Ill. 281, 285. *Tucker* v. *Andrews,* 13 Maine, 124, 128. *Smith* v. *Smith,* 2 Halst. Eq. 515, 522. *Johnson* v. *Peterson,* 59 N. C. 12, 14. *Taylor* v. *Taylor,* 197 N. C. 197, 201. *Hall* v. *Carmichael,* 67 Tenn. 211, 217.

The defendant has argued that the note and mortgage

were given upon a meritorious consideration of blood and affection and hence were not fraudulent *per se*, citing *Winchester* v. *Charter,* 12 Allen, 606, and other cases decided by this court, where the controversies were between creditors of the grantor and the grantee. It is true that "fraud [is] never presumed . . . [and that] it must be affirmatively alleged and proved by the party who relies upon it, either for the purpose of attack or defence." *Barron* v. *International Trust Co.* 184 Mass. 440, 443. *Kerrigan* v. *Fortunato,* 304 Mass. 617, 620. The plaintiff, however, in his bill has alleged the fraud, and we are of opinion that he has sustained the burden resting upon him to prove it.

In *Hall* v. *Carmichael,* 67 Tenn. 211, at page 217, the court said: "The idea seems to pervade all the authorities that such a conveyance, though *prima facie* good, must be judged by its own particular surroundings, and that a purposed concealment is evidence of a purposed fraud." It is conceded in the defendant's brief that the plaintiff was not informed by the deceased that she had executed the note and mortgage.

There is at least an intimation in some cases that, if the conveyance is to or for the benefit of children of a former marriage, the conveyance is not invalid. See *Hall* v. *Carmichael,* 67 Tenn. 211, 216. But in *Dunbar* v. *Dunbar,* 254 Ill. 281, where the conveyance was made, on the eve of marriage, to children of the man by a former marriage, the court, at page 287, said that "to sustain the conveyance it must be shown to have been made by the grantor in the discharge of some legal or equitable obligation which the law would recognize and enforce at the instance of the grantee, as contradistinguished from a mere moral obligation growing out of some unenforcible promise." See also *Bookout* v. *Bookout,* 150 Ind. 63; *Collins* v. *Collins,* 98 Md. 473, 480; *Manes* v. *Durant,* 2 Rich. Eq. 404, 406; *Ramsay* v. *Joyce,* McMul. Eq. 236, 251. We think this represents the better view.

In the present case the deceased did not execute the note and mortgage in satisfaction of any legal or equitable obli-

gation owed by her to the defendant. The defendant was not to enjoy the attempted gift unless she survived the deceased. The plain object of the transaction was to deprive the plaintiff of his marital rights and his just expectations. It follows from what we have said that the note and mortgage are fraudulent against the plaintiff. It is unnecessary to consider whether the transaction complained of was an attempted testamentary disposition which failed because not executed with the formalities required by G. L. (Ter. Ed.) c. 191, § 1.

The decree entered in the Superior Court is reversed, and a final decree is to be entered enjoining the defendant and those claiming under her from setting up the note and mortgage in any way so as to defeat or impair the rights in his wife's estate to which the plaintiff would be entitled but for the note and mortgage, and awarding costs to the plaintiff.

*Ordered accordingly.*