## TREGEA *v.* MODESTO IRRIGATION DISTRICT.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 13.    Argued January 23, 24, 27, 1896. — Decided November 16, 1896.

The laws of California authorize the bringing of an action in its courts by the board of directors of an irrigation district, to secure a judicial determination as to the validity of the proceedings of the board concerning a proposed issue of bonds of the district, in advance of their issue. The Modesto District was duly organized under the laws of the State, and its directors, having defined the boundaries of the district, and having determined upon an issue of bonds for the purpose of, carrying out the objects for which it was created, as defined by the laws of the State, commenced proceedings in a court of the State, seeking a judicial determination of the validity of the bonds which it proposed to issue. A resident of the district appeared and filed an answer. After a hearing, in which the defendant contended that the judgment asked for would be in violation of the Constitution of the United States, the proceedings resulted in a judgment in favor of the district. Appeal being taken to the Supreme Court of the State, it was there adjudged that the proceedings were regular, and the judgment, with some modifications, was sustained. The case being brought here by writ of error, it is *Held*, that a Federal question was presented by the record, but that the proceeding was only one to secure evidence; that in the securing of such evidence no right protected by the Constitution of the United States was invaded; that the State might determine for itself in what way it would secure evidence of the regularity of the proceedings of any of its municipal corporations; and that unless in the course of such proceedings some constitutional right was denied to the individual, this court could not interfere on the ground that the evidence might thereafter be used in some further action in which there might be adversary claims.

ON March 7, 1887, the legislature of the State of California passed an act, (Stat. Cal. 1887, 29,) whose scope and purpose were disclosed in the first section :

"Sec. 1. Whenever fifty, or a majority of freeholders own-ing lands susceptible of one mode of irrigation from a com-mon source, and by the same system of works, desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act, and when so organized such districts shall have the powers conferred, or that may hereafter be conferred, by law upon such irrigation districts."

This act was amended in 1889 and 1891, (Stat. Cal. 1889, 15; 1891, 53, 142, 147, 274,) the amendments looking to a mere perfection of the system. In a general way it may be remarked that the system contemplated was substantially this: Upon petition of the requisite number of inhabitants of a proposed district and publication of notice the board of supervisors of the county in which the district, or the larger portion of it, was situated was required to examine into the matter at a regular meeting, and after its determination to give notice and call an election, at which all the electors of the proposed district were entitled to vote. If two-thirds of the votes cast were in favor thereof an order was to be entered on the minutes of the board declaring the proposed district organized into a municipal corporation. Provision was made for directors, three or five in number, to be elected from sepa-rate divisions or from the district at large, who constituted the governing board of the new corporation. They had charge of the construction of the irrigation works, of the levy of taxes, and the borrowing of money. They were authorized to submit to the voters the question of issuing bonds for a specified amount, such bonds to be the obligations of the district, and to be paid by taxation in the ordinary manner of discharging municipal obligations. Section 12 reads that "the use of all water required for the irrigation of the lands of any district formed under the provisions of this act, together with the rights of way for canals and ditches, sites for reservoirs, and all other property required in fully carrying out the provisions of this act, is hereby declared to be a public use, subject to the regulation and control of the State, in the manner pre-scribed by law."

This was simply carrying into the statute the language of the state constitution, section 1, article 14, which is as follows:

"Sec. 1. The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental or distribution, is hereby declared to be a public use, and subject to the control and regulation of the State, in the manner to be prescribed by law."

The constitutionality of this law has been settled in the case of *Fallbrook Irrigation District* v. *Bradley, ante,* 112, just decided, which was argued with this case.

On February 16, 1889, two acts were passed, (Stat. Cal. 1889, 18, 21,) for changing the boundaries of irrigation districts by taking in adjacent territory or excluding some of the territory within the original boundaries. On March 16, 1889, (Stat. Cal. 1889, 212,) a further act was passed authorizing action in the courts at the instance of the board of directors for a judicial determination of the validity of the proceedings in respect to the issue of bonds, and this, if desired, before the bonds had been actually disposed of. The purpose of this act is thus stated by the Supreme Court of California, in the opinion filed in the present case:

"As the validity of the bonds when issued depends upon the regularity of the proceedings of the board and upon the ratification of the proposition by a majority of the electors, it is matter of common knowledge that investors have been unwilling to take them at their par value while all the facts affecting their validity remain the subject of question and dispute."

"To meet this inconvenience, for the security of investors, and to enable the irrigation districts to dispose of their bonds on advantageous terms, the supplemental act under which this proceeding was instituted was passed."

In the summer of 1887 the Modesto Irrigation District was organized under authority of the act of March 7, 1887. The conformity of the proceedings taken in its organization to the requirements of the act is not denied. The area of the district as organized was 108,000 acres. The board of directors, after

estimating and determining that $800,000 were necessary for the proper construction of the irrigation works, ordered a special election to be held on December 14, 1887, to enable the voters of said district to pass upon the question of the issue of bonds to that amount. The election was had, and resulted in a large majority in favor of the issuing of the bonds; out of 515 votes cast, 439 were in the affirmative. On January 3, 1888, the board of directors met at a regular meeting and ordered the bonds of the district to the amount of $800,000 to be issued in the manner and form prescribed by law. On or about June 4, 1889, certain parties owning tracts of land within the boundaries of the irrigation district proceeded under the terms of the exclusion act to petition for an exclusion of their lands from its limits. These proceedings culminated in an order of July 20, 1889, excluding a tract of 28,000 acres, and leaving only 80,000 acres within the district. On July 31, 1889, no bonds having as yet been issued under the order of January 3, 1888, the board of directors entered a new order for the issue of bonds to the amount of $400,000. The resolution which was passed described the denomination and form of the bonds thus to be issued, and directed that notice be given that sealed proposals would be received up to September 3, 1889, for the purchase of such bonds. On August 1, 1889, the day after the entry of the last order, a petition was filed by the board of directors in the Superior Court of Stanislaus County, seeking a judicial determination, in accordance with the act of March 16, 1889, of the validity of the proposed issue of bonds. The petition as filed set forth only the order of July 31, 1889, for the issuance of bonds to the amount of $400,000, and asked that they be declared valid. In these proceedings Tregea, a resident of the district, appeared and filed an answer. The case, as between the board of directors and Tregea, came on for trial on October 21, 1889, and, after the testimony had all been received and during the argument, the plaintiffs were permitted to amend their petition so to include therein the order of the directors of January 3, 1888, for the issue of $800,000 in bonds, and a prayer for the confirmation thereof. No one had notice of this

amendment except the defendant Tregea.    He demanded
that, in consequence of such amendment, a trial should be
had *de novo*, but the court overruled his application, granted
leave to file an amended answer, and permitted further evi-
dence only in respect to the new matter set out in such
amended pleadings.    On November 29, 1889, written findings
of fact and conclusions of law were filed and judgment
entered, which judgment was in the following language :

"Wherefore, by reason of the law and the finding aforesaid,
it is ordered, adjudged and decreed, that the proceedings by
and under the direction of the board of supervisors of said
county which are recited in the said findings, which were had
for the organization of said irrigation district, the boundaries
of which are described in said finding, including in said pro-
ceedings the election in said finding mentioned, which was
held for the purpose of determining whether said proposed
district should be organized as an irrigation district, be, and
the same hereby are, approved and confirmed ; and it is further
ordered, adjudged and decreed that the proceedings had by
and under the direction of the said board of directors which
are recited in said petition and said findings, which were had
for the purpose of the issue and sale of the bonds of said dis-
trict to the amount of eight hundred thousand dollars, includ-
ing in said proceedings the said election mentioned in said
petition and findings, which was held for the purpose of deter-
mining whether the bonds of said district should be issued ;
also the proceedings by and under the direction of said board,
which are recited in said findings, by which a certain tract of
land in said findings described, which was included within the
boundaries of said district as it was organized as aforesaid,
was excluded from said district, and by which the boundaries
of said district are defined and described as said boundaries
were and remained upon and after the exclusion from said
district of said tract of land, which said boundaries are in said
findings described, and also the proceedings by and under the
direction of said board by which it was ordered that bonds of
said district to the amount of four hundred thousand dollars,
parcel of said amount of eight hundred thousand dollars of

said bonds, be offered for sale in the manner provided by law, be, and each and all of said proceedings is, and are hereby, approved and confirmed; and it is further ordered, adjudged and decreed that the said Modesto Irrigation District; ever since its organization as aforesaid, has been and now is a duly and legally organized irrigation district, and that said irrigation district possesses full power and authority to issue and sell from time to time the bonds of said irrigation district to the amount of eight hundred thousand dollars."

The defendant appealed from this judgment and decree to the Supreme Court of the State which, on March 19, 1891, modified the decree of the Superior Court by striking out so much thereof as confirmed the order of January 3, 1888, for the issue of $800,000 of bonds of the district, and, as so modified, affirmed it. The opinion of that court is found in 88 California, 334. To reverse this judgment of the Supreme Court of the State the defendant sued out a writ of error from this court.

*Mr. Thomas B. Bond* for plaintiff in error. *Mr. J. J. Scrivner* and *Mr. George W. Schell* were on his brief.

*Mr. John H. Boalt*, as *Amicus Curiæ,* filed a brief in the interest of plaintiff in error.

*Mr. A. L. Rhodes* for defendant in error.

*Mr. Benjamin Harrison* for defendant in error.

*Mr. C. C. Wright* for defendant in error. *Mr. Joseph H. Call* was on his brief.

*Mr. John F. Dillon* for defendant in error. *Mr. Harry Hubbard* and *Mr. John M. Dillon* were on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

A motion was made to dismiss this case on the ground of the lack of a Federal question. It appears from the opinion

of the Supreme Court of the State that the defendant contended before it that the attempt to bind the reconstituted district — that is, the district diminished by the exclusion of 28,000 acres, and in which his property was situated — by a vote of the district prior to such exclusion in respect to the issue of bonds, was in violation of section 10, article I of the Constitution of the United States; and that it overruled and denied such contention.   So there was considered by the Supreme Court of the State the distinct question of an alleged conflict between the proceedings confirmed by the decree of the lower court and rights claimed under the Constitution of the United States, and the decision was against those rights.   Further, the real contention of the defendant was and is that the operation of this statute is to deprive him of property without due process of law.   The burden of his case from the first has rested in the alleged conflict between proceedings had under the irrigation statute and the Federal Constitution; so that beyond the express declaration in the opinion of the Supreme Court of the State, we may look to the real matter in dispute, and these unite in forbidding us to say that no Federal question was presented.   The motion to dismiss on that ground must be overruled.

But going beyond this matter, we are confronted with the question whether, in advance of the issue of bonds and before any obligation has been assumed by the district, there is a case or controversy with opposing parties, such as can be submitted to and can compel judicial consideration and judgment. This is no mere technical question.   For, notwithstanding the adjudication by the courts of the State in favor of the validity of the order made for the issue of four hundred thousand dollars of bonds, and, notwithstanding any inquiry and determination which this court might make in respect to the matters involved, there would still be no contract executed; no obligation resting on the district.   All that would be accomplished by our affirmance of the decision of the state court would be an adjudication of the right to make a contract, and, unless the board should see fit to proceed in the exercise of the power thus held to exist, all the time and labor

of the court would be spent in determining a mere barren right — a purely moot question.

We are not concerned with any question as to what a State may require of its judges and courts, nor with what measures it may adopt for securing evidence of the regularity of the proceedings of its municipal corporations. It may authorize an auditor or other officer of state to examine the proceedings and make his certificate of regularity conclusive evidence thereof, or it may permit the district to appeal to a court for a like determination, but in either event it is a mere proceeding to secure evidence.

The directors of an irrigation district occupy no position antagonistic to the district. They are the agents and the district is the principal. The interests are identical, and it is practically an *ex parte* application on behalf of the district for the determination of a question which may never in fact arise. It may be true, as the Supreme Court say, that it is of advantage to the district to have some prior determination of the validity of the proceedings in order to secure the sale of its bonds on more advantageous terms, but that does not change the real character of this proceeding.

This is not the mere reverse of an injunction suit brought by an inhabitant of the district to restrain a board from issuing bonds, for in such case there is an adversary proceeding. Underlying it is the claim that the agent is proposing to do for his principal that which he has no right to do, and to bind him by a contract which he has no right to make; and to protect his property from burden or cloud the taxpayer is permitted to invoke judicial determination. If in such suit an injunction be granted, as is prayed for, the decision is not one of a moot question, but is an adjudication which protects the property of the taxpayer.

The power which the directors claim is a mere naked power, and not a power coupled with an interest. It is nothing to them, as agents, whether they issue the bonds or not; they neither make nor lose by an exercise of the alleged power; and if it be determined that the power exists, still no burden

is cast upon the property of the district because no bonds are issued save by the voluntary act of the board.

It may well be doubted whether the adjudication really binds anybody. Suppose the judgment of the court be that the proceedings are irregular, and that no power has been by them vested in the district board, and yet notwithstanding such decision the board issues, as provided by the act, the negotiable bonds of the district, will a *bona fide* purchaser of those bonds be estopped by that judgment from recovering on the bonds against the district? The doctrine of *lis pendens* does not apply. Neither is any such adjudication binding in respect to negotiable paper unless the party purchases with knowledge of the suit or the decree. *Warren County v. Marcy*, 97 U. S. 96; *Brooklyn v. Insurance Company*, 99 U. S. 362; *Orleans v. Platt*, 99 U. S. 676; *Cass County v. Gillett*, 100 U. S. 585; *Empire v. Darlington*, 101 U. S. 87; *Thompson v. Perrine*, 103 U. S. 806; *Carroll County v. Smith*, 111 U. S. 556; *Scotland County v. Hill*, 112 U. S. 183.

The case of *Carroll County v. Smith* is instructive on this question. In that case, before the issue of the bonds in suit, an injunction had been issued by the chancery court of the county enjoining the county officials from issuing and delivering the bonds, which injunction was afterwards sustained and made perpetual by the judgment and decree of the Supreme Court of the State. Notwithstanding which the county officials fraudulently and illegally issued the bonds, and this court sustained a judgment on those bonds in favor of a *bona fide* holder, saying in the opinion: " The defendant in error was no party to that suit, and the record of the judgment is therefore no estoppel. The bonds were negotiable, and there was, therefore, no constructive notice of any fraud or illegality by virtue of the doctrine of *lis pendens*. *Warren County v. Marcy*, 97 U. S. 96. It is not alleged in the plea that the defendant in error had actual notice of the litigation, or of the grounds on which it proceeded, or that any injunction was served upon the board of supervisors; and, if he had, that notice would have been merely of the question of law, of

which, as we have seen, he is bound to take notice, at all
events, and which is now for adjudication in this case."

The case of *Scotland County* v. *Hill, supra,* contains noth-
ing in conflict with this, for that determines only the effect of
actual notice of the pendency of a suit, the point of the deci-
sion being expressed in these words of the Chief Justice:

"The case of *Warren County* v. *Marcy,* 97 U. S. 96, decides
that purchasers of negotiable securities are not chargeable
with *constructive* notice of the pendency of a suit affecting
the title or validity of the securities; but it has never been
doubted that those who buy such securities from litigating
parties, with *actual* notice of the suit do so at their peril, and
must abide the result the same as the parties from whom they
got their title."

But if a judgment in such a proceeding as this cannot be
invoked by the district as *res judicata* in an action brought
against it by the holders of bonds thereafter wrongfully issued,
can a judgment in favor of the power be invoked by the
holder of such bonds as conclusive upon the district upon the
ground of *res judicata?* In order to create estoppel by judg-
ment must there not be mutuality? We do not mean to inti-
mate that it may not have effect as evidence, like the certifi-
cate of an auditor declared by a legislature to be conclusive,
but is it not simply as evidence and not as *res judicata?*

Some light may be thrown on this question by reference to
a matter of a somewhat kindred nature. In States which
provide for the organization of corporations under general
statute different modes of procedure are prescribed. In some
States it is sufficient for the parties desiring to incorporate to
prepare a charter, acknowledge it before some official, and file
it with the secretary of state, or other public officer, and the
certificate of such officer is made the evidence of the incor-
poration. In other States the parties may file a petition in
some court, and that court upon presentation thereof examines
into the propriety of the incorporation, and if satisfied thereof
enters a decree declaring the petitioners duly incorporated,
and the copy of such decree is the evidence of the incorpora-
tion. Does the difference in procedure between these two

cases create any essential difference in character? Is the one executive and the other judicial? Suppose, in the latter case, the statute had provided that either one of the petitioners might appeal from the decree of a lower to the Supreme Court of the State, in order to obtain a final adjudication in favor of the propriety of such incorporation, would this court entertain a suit in error to reverse such adjudication by the highest court of the State? Would it not be held in effect, whatever the form, a mere *ex parte* case to obtain a judicial opinion, upon which the parties might base further action? It seems to us that this proceeding is after all nothing but one to secure evidence, that in the securing of such evidence no right protected by the Constitution of the United States is invaded, that the State may determine for itself in what way it will secure evidence of the regularity of the proceedings of any of its municipal corporations, and that unless in the course of such proceeding some constitutional right is denied to the individual, this court cannot interfere on the ground that the evidence may thereafter be used in some further action in which there are adversary claims. So on this ground, and not because no Federal question was insisted upon in the state court, the case will be

*Dismissed.*

Mr. Justice Harlan, Mr. Justice Gray and Mr. Justice Brown are of opinion that, as the judgment of the state court was against a right and privilege specially set up and claimed by the plaintiff in error under the Constitution of the United States, such judgment, if not modified or reversed, will conclude him, if not all holders of taxable property in the Modesto Irrigation District, in respect of the Federal right and privilege so alleged; consequently, it is the duty of this court to determine, upon its merits, the Federal question so raised by the pleadings and determined by the judgment of the state court. They are also of opinion that the principles announced in *Fallbrook Irrigation District* v. *Bradley, etc.*, just decided, sustain the conclusions of the state court upon this Federal question and require the affirmance of its judgment.