FIDELITY NAT. BANK & TRUST CO. OF KANSAS CITY et al. v. SWOPE et al. ·

(Circuit Court of Appeals, Eighth Circuit. November 17, 1924.)

No. 6136.

1. **Courts** ☞259—Charter held not intended to authorize state court to determine constitutionality of tax bills.

Kansas City Charter, art. 8, § 28, authorizing state court to determine validity of ordinance establishing taxing district for local improvement, was not intended to authorize court

to pass on validity, under Const. Amend. 14, of tax bills issued under contract to be subsequently executed, since attempt to confer such authority would be beyond power of state Legislature.

2. **Judgment** ☞828(1)—Decree of state court determining constitutionality of tax bills for local improvement held not binding on parties to suit in federal court.

Controversy as to validity of tax bills for public improvement before contracts therefor are executed is moot, and, even if state court was authorized by Legislature to pass on validity thereof, its findings thereon would not bind parties to suit in federal court.

3. **Municipal corporations** ☞429—Cost of improvements may be assessed against abutting property.

Cost of local improvements may be assessed against abutting property running back reasonable distance and apportioned on frontage, area, value of, or estimated benefit to, several parcels; underlying principle being special benefits to property.

4. **Municipal corporations** ☞428—Assessment of abutting property for .improvement on another street not justified. '

There is no principle of law or equity which justifies assessment of property abutting on one street to pay for local improvements on some other street. ·

5. **Municipal corporations** ☞412—Cost of public improvements of general character must be assessed against all property in municipality.

Public improvements may be of such general character that cost of making them may · not legally be assessed on anything less than all property of municipality.

6. **Municipal corporations** ☞450(1)—Semipublic improvements need not be assessed on abutting property only, nor on property in whole city.

Assessments for "semi-public improvements" falling between strictly local improvements and public improvements are not confined to abutting property, but may be assessed on something less than the whole of municipality.

7. **Municipal corporations** ☞450(1)—Benefit district and assessments held arbitrary and unreasonable.

Benefit district consisting of 250 acres of unimproved suburban land created to meet expense of boulevard approach to city park, for gratification of public at large and for benefit of city at large, and only incidentally benefiting locality through which it passed, and assessments thereunder, were not within Kansas City Charter, art. 8, § 28, but were arbitrary and unreasonable.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by Felix H. Swope and others against the Fidelity National Bank & Trust Company of Kansas City and others. From a decree of the District Court for complainants (274 F. 801), defendants appeal. Affirmed.

Justin D. Bowersock and R. E. Ball, both of Kansas City, Mo. (Samuel J. McCulloch, Frank P. Barker, G. V. Head, Bowersock

& Fizzel, and Miller, Camack, Winger & Reeder, all of Kansas City, Mo., on the brief), for appellants.

Elliott H. Jones, of Kansas City, Mo. (William C. Scarritt, H. M. Langworthy, A. S. Marley, Edward L. Scarritt, and O. H. Dean, all of Kansas City, Mo., on the brief), for appellees.

Before STONE, Circuit Judge, and TRIEBER and JOHNSON, District Judges.

JOHNSON, District Judge. Appellees, hereinafter called plaintiffs, residents and citizens of the state of Tennessee, brought suit in the court below to have declared null and void certain tax bills issued by Kansas City assessing plaintiffs' lands their alleged pro rata share of the cost of grading Meyer Boulevard in said city. The trial court granted the relief prayed for, canceled the tax bills, and adjudged plaintiffs' lands free of any and all liens of or on account of the same. The defendants have appealed the case to this court. It was claimed in the court below, and it is claimed here, that the assessments were unreasonable, discriminatory, and arbitrary, and amounted to the taking of property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States. The validity of the tax bills was not attacked by plaintiffs on the ground of lack of notice. Indeed, a defense to the action, and the one standing at the threshold of the consideration of the case, is that the matters complained of are res judicata by reason of the proceeding had in the circuit court of Jackson county in which Kansas City is situated.

[1] Section 28 of article 8 of the Charter of Kansas City provides:

"The public work (street improvements) * * * shall be provided for by ordinance, and the city may provide that after the passage of the ordinance and after an approximate estimate of the cost of the work shall have been made by the board of public works, the city shall file a proceeding in the circuit court of Jackson county, Missouri, in the name of the city, against the respective owners of land chargeable under the provisions of this section with the cost of such work. In such proceeding the city shall allege the passage and approval of the ordinance providing for the work, and the approximate estimate of the cost of said work; and shall define and set forth the limits of the benefit district, prescribed by the ordinance, within which it is proposed to assess property for the payment of said work. The prayer of the petition shall be that the court find and determine the validity of said ordinance, and the question of whether or not the respective tracts of land within said benefit district shall be charged with the lien of said work in the manner provided by said ordinance."

There was at least an attempted compliance with this provision of the statute which resulted in a judgment of the circuit court declaring the ordinance to grade Meyer Boulevard valid, and adjudging that the proposed lien of assessments for the cost of the work provided for in the ordinance should be a valid and legal lien against the respective lots and tracts of land within the benefit district created by the ordinance, when duly assessed, apportioned, and charged as provided in the ordinance and the charter of the city.

[2] It is not necessary to consider the alleged defects in the procedure. In our opinion, as between parties situated as the parties to this action, it was not the intention of the Legislature to authorize the state court to pass upon the constitutionality of the tax bills (under the Fourteenth Amendment) which might be issued under a contract to be thereafter entered into by the common council for the contemplated work, because to attempt to confer such authority upon the court would be beyond its power. Federal courts at least are constitutional tribunals for the determination of actual controversies between parties having some interest in the subject-matter. The questions in controversy in this case at the time of the hearing in the state court could only be moot and a finding by the state court upon these questions, even if authorized by the Legislature and specifically made in its judgment, would not in a federal court be binding upon the parties to this action. Tregea v. Modesto Irrigation District, 164 U. S. 179, 17 S. Ct. 52, 41 L. Ed. 395; Muskrat v. United States, 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246.

The facts of the case are as follows:

Some 25 years ago Swope Park, consisting of about 1,300 acres, was donated to Kansas City by Col. Thomas H. Swope to be used as a public park. The entrance to the park is about 8½ miles from the business center of the city. Meyer Boulevard from the Paseo to Swope Park, is a broad highway, being 220 feet wide at its narrowest point, and 500 feet wide as it approaches the park. Provision is made for parkways between the driveways, so that of the total area of the boulevard only about 11 acres are taken up by the driveways, and

the remaining 20 acres consist of grass parkways. The grading includes the entire area. The benefit district extends approximately 1 mile in length and is something less than a half mile in width. It consists of about 250 acres of suburban unimproved and unplatted lands lying adjacent to the park and between it and the city, and at its nearest point the benefit district is about 7 miles distant from the business center.

Section 3 of article 8 of the Charter of Kansas City provides the proceedings to be observed by the city in authorizing street improvements, including grading, and provides further that:

"The cost of all grading * * * shall be charged as a special tax on all lands on both sides of the street * * * graded within the following limits, viz.: * * * In case any land fronting on such street * * * graded, be not laid off into lots or blocks, then the land not so laid off, and the land in the rear thereof on the line of the street * * * graded, back 150 feet, shall be so charged, whether fronting on the street or not; and land liable for such grading shall be charged according to the value thereof, exclusive of improvements thereon, as herein provided."

[3] It is well settled that the cost of local improvements such as street grading and paving, curbing and guttering, and laying of sidewalks may be assessed against the abutting property running back a reasonable distance and apportioned upon the frontage, the area, the value of, or the estimated benefit to, the several parcels. Houck v. Little River District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266; Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523; Bauman v. Ross, 167 U. S. 548, 590, 17 S. Ct. 966, 42 L. Ed. 270.

While such improvements are for public use, the assessment of the cost thereof against the abutting property is not inequitable. In the course of time through continued improvement all abutting property and each owner of abutting property in the community make similar, if not exactly the same proportional, contributions for the public good. Under these conditions the increase in the value of the abutting property and the convenience resulting to the several owners are generally, and as far as humanly practicable, the same. The underlying principle is that the special benefits accruing to the abutting property from the improvements justify the assessments. Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443.

[4] On the other hand, there is no principle of law or equity which justifies the assessment of property abutting on one street to pay for local improvements on some other street. State v. Newark, 37 N. J. Law, 415, 18 Am. Rep. 729.

[5] Over against strictly local public improvements, the cost of which may be assessed against the adjacent property specially benefited thereby, there are public improvements of such general character that the cost of making them may not be legally assessed upon anything less than all the property of the municipality, as for instance, city halls, courthouses, and the like.

[6] Between these there is a class of public improvements the cost of which, while not confined to adjacent or abutting property, may be assessed upon something less than the whole of the municipality because specially benefited; parking districts, districts to pay for the construction of bridges, viaducts, and the like, belong to this class. For lack of a better name this class may be designated as semipublic improvements. Section 28 of article 8 of the Charter of Kansas City covers some improvements of this class. It provides:

"When in grading or regrading any street, avenue, highway, or part thereof, a very large or unusual amount of filling in or cutting or grading away of earth or rock be necessary, necessitating an expense of such magnitude as to impose too heavy a burden on the land situate in the benefit district as limited in section three of this article, and when in grading or regrading, constructing or reconstructing any street, avenue, highway or part thereof, one or more bridges, viaducts, tunnels, subways, cuts or approaches on, along, over or under the same is or are required or needed, the cost of grading or regrading such street, avenue, highway, or part thereof, including the cost of constructing or reconstructing such bridges, viaducts, tunnels, subways and approaches, or any of them, may be charged as a special tax on parcels of land (exclusive of improvements) benefited thereby, after deducting the portion of the whole cost, if any, which the city may pay, and in proportion to the benefits accruing to the said several parcels of land, exclusive of improvements thereon, and not exceeding the amount of said benefit, said benefits to be determined by the board of public works as hereinafter provided, and the limits within which parcels of land are benefited shall in all such specified instances be prescribed and determined by ordinance. If the common council shall find and declare in

the ordinance providing for the doing of the work above described that a very large or unusual amount of filling in or cutting or grading away of earth or rock is necessary, necessitating an expense of such magnitude as to impose too heavy a burden on the land situate in the benefit district as limited in section three of this article, or that in grading or regrading, constructing or reconstructing any street, avenue, highway, or part thereof, one or more bridges, viaducts, tunnels, subways, cuts or approaches on, along, over or under the same is, or are required or needed, the finding and declaration in said ordinance shall be final and conclusive as to all such matters."

Instead of assessing the cost of the grading of Meyer Boulevard against the abutting property as provided in section 3 of article 8, the common council proceeded under section 28 and in the ordinance authorizing the grading of the boulevard provided:

"The common council hereby finds and declares that in the grading of said boulevard or highway a very large or unusual amount of filling in, or cutting or grading away of earth or rock is necessary, necessitating an expense of such magnitude as to impose too heavy a burden on the land situate in the benefit district as limited in section 3 of article VIII of the Charter of Kansas City.

"The cost of grading said boulevard or highway as provided herein, shall be charged as a special tax on parcels of land (exclusive of improvements) benefited thereby after deducting the portion of the whole cost, if any, which the city may pay, and in proportion to the benefits accruing to the said several parcels of land, exclusive of improvements thereon, and not exceeding the amount of said benefits, said benefits to be determined by the board of public works and after said work shall have been fully completed, the cost thereof shall be estimated by the said board of public works and shall be apportioned by said board of public works against the various lots, tracts and parcels of land within the benefit district, according to the assessed value thereof, exclusive of improvements, as provided in section 28, of article VIII of the Charter of Kansas City aforesaid; and the limits within which parcels of land are benefited as aforesaid, and within which it is proposed to assess property for the payment of said work and improvement, are hereby prescribed and determined to be the same limits as are hereinbefore, in section 4 of this ordinance, prescribed and determined

as the limits within which private property is deemed benefited by the proposed grading of said boulevard or highway, all in pursuance of section 28 of article VIII of the Charter of Kansas City, aforesaid."

The common council in section 4 of the ordinance created a benefit district of about 250 acres of suburban unimproved and unplatted lands upon which it assessed the cost of the improvement.

The principle that assessments be in porportion to benefits, applicable to semipublic improvements, is applied by the express terms of section 28 of article 8 of the Charter of Kansas City, above quoted, which provides that the cost "may be charged as a special tax on parcels of land * * * benefited thereby * * * in proportion to the benefits accruing to the said several parcels of land * * * not exceeding the amount of said benefit."

[7] The extent to which the lands of plaintiffs were benefited is in sharp dispute in the record, but it is not in dispute that Swope Park, and a very considerable portion of the city, was greatly benefited by the construction of Meyer Boulevard.

As already said, Meyer Boulevard is a broad highway 220 feet wide at its narrowest point and 500 feet wide as it approaches the park. As stated by the trial court: "Meyer Boulevard with its heroic proportions was conceived for the purpose of establishing an inspiring approach to Swope Park, the great playground of Kansas City, and incidentally a thoroughfare into which, directly and indirectly the boulevard system of Kansas City might discharge the throngs of pleasure seekers and pleasure drivers who visit that park." We agree with the trial court that it was clearly arbitrary and unreasonable and grossly unjust for the common council of Kansas City to impose upon the owners of 250 acres of unimproved suburban land the whole cost of this improvement. No such improvement as Meyer Boulevard would have been made if Sixty-Fifth or Sixty-Sixth street had been opened and graded as a local improvement for the benefit of the lands adjacent and for the use of the owners of these lands. Similar streets in the neighborhood, such as Sixty-Seventh, Sixty-Third, Brooklyn avenue, and others, are examples of the character of street improvements considered necessary in that neighborhood. If the street had been graded for the ordinary use of the neighborhood, the common council would have had no occasion to recite in the ordi-

nance that a "very large or unusual amount of filling in, or cutting or grading away of earth or rock is necessary." The street would have been made in the main to conform to the natural grade of the country, and one roadway of modest width, without parking accessories, undoubtedly would have been deemed sufficient, and the cost of such grading would have been assessed in the usual way on the abutting property extending back 150 feet from the highway.

Meyer Boulevard, conceived for the purpose of establishing an inspiring approach to Swope Park, is, as stated by the trial court, "an appropriate and desirable enterprise for the gratification of the public at large, and its chief value is to the public at large and to the city property to which it is tributary, and only very incidentally to the locality through which it passes."

The truth is section 28 was made in this matter to apply to a situation never contemplated by the Legislature. In cities situated as Kansas City upon hilly and rolling ground it may often happen that it may be necessary to make heavy cuts or deep fills, and such highways when constructed often serve not only the adjacent lands but neighborhoods and communities far beyond them. Such a highway (or bridge, viaduct, tunnel, or subway also provided for in section 28) may serve and be of benefit to lands lying far beyond the improvement because rendering such lands, not otherwise so, accessible to the business center of the city. Under such conditions such remote lands are benefited directly by the improvement, and section 28 provides that "the cost of grading in such case may be charged as a special tax on parcels of land * * * benefited thereby * * * in proportion to the benefits accruing to the said several parcels of land * * * not exceeding the amount of said benefit."

The benefit district created ∙ to pay the cost of grading Meyer Boulevard does not come within either the letter or the spirit of this provision of the charter. The charter provision was improperly applied, with the result that the assessments against plaintiffs' lands, irrespective of their value, were arbitrary and unreasonable and should not be permitted to stand. Martin v. District of Columbia, 205 U. S. 135, 27 S. Ct. 440, 51 L. Ed. 743.

The lower court committed no error in holding the tax bills invalid.

The judgment is affirmed.