**ROBERT NOBLE ESTATE et al. v. BOISE CITY.**

District Court, D. Idaho, S. D. May 14, 1927.

No. 1298.

1. **Municipal corporations ⊂⇒407(1)—Statutes authorizing repaving of pavements, assessable same as original improvements, held valid, where benefits equal assessments (Comp. St. Idaho 1919, §§ 3828, 3944, 3999–4012).**

Comp. St. Idaho 1919, §§ 3828, 3944, 3999–4012, providing for repairing and repaving of streets, to be paid for in same manner as provided for making original improvements, for the establishment of improvement districts, and assessment of costs of such improvements against lands abutting on, or tributary to, improvement to extent that they will be benefited thereby, *held* violative of no constitutional right, so long as benefits continue respectively to equal the individual assessments.

2. **Constitutional law ⊂⇒290(3)—Municipal corporations ⊂⇒407(1)—Statutes providing for repaving streets held to provide for ample notice and opportunity to be heard as respects due process (Comp. St. Idaho 1919, §§ 3828, 3942, 3944, 3999–4013; Const. U. S. Amend. 14).**

Comp. St. Idaho 1919, §§ 3828, 3942, 3944, 3999–4013, *held* to provide for giving property owners assessed for cost of repairing and resurfacing streets ample notice and opportunity to be heard, and are not violative of due process under Const. U. S. Amend. 14.

3. **Municipal corporations ⊂⇒414(1)—Statute held to give council discretion as to assessment for repairing streets, and, in absence of abuse, courts will not interfere (Comp. St. Idaho 1919, § 4005).**

Comp. St. Idaho 1919, § 4005, authorizing city council to pay from general fund for repairing or relaying street such sums as in their judgment may be fair and equitable in consideration of benefits accruing to general public therefrom, grants council some discretion respecting amounts to be assessed and paid out of the general fund, respectively, and, when such discretion is exercised, courts should not set it aside unless action of council was arbitrary and without regard to benefits accruing to adjacent property.

4. **Municipal corporations ⊂⇒414(1)—Failure to assess abutting property on connecting streets held not to render creation of street improvement district abuse of discretion (Comp. St. Idaho 1919, § 4005).**

Creation of street improvement district for repairing and resurfacing of streets, to be paid for by assessment against adjacent property, *held* not abuse of discretion because such streets led to, and connected with, streets forming part of general scheme of improvement paid for out of general city fund under Comp. St. Idaho 1919, § 4005.

5. **Municipal corporations ⊂⇒465—To what extent public and adjacent property, respectively, is benefited by street improvement depends on facts of case (Comp. St. Idaho 1919, § 4005).**

To what extent traveling public or abutting property receives the greater benefit from street improvement under Comp. St. Idaho 1919, § 4005, depends on facts of particular case, requiring determination as to character of improvement, location and kind of property assessed, and extent, if any, to which the improvement would benefit or enhance adjacent property values.

6. **Constitutional law ⊂⇒233, 290(1)—Municipal corporations ⊂⇒474—Failure to assess other abutting property held not to render assessment discriminatory and violative of due process and equal protection clauses (Comp. St. Idaho 1919, §§ 3828, 3942, 3944, 3999–4013; Const. U. S. Amend. 14).**

Under Comp. St. Idaho 1919, §§ 3828, 3942, 3944, 3999–4013, that city paid for repairing and repaving of street in front of other property abutting on line of improvement, did not render assessment against abutting property owners in certain improvement district unlawful discrimination violative of due process and equal protection clauses of Const. U. S. Amend. 14.

7. **Municipal corporations ⊂⇒465—Validity of assessments for street improvements depends on particular facts of case.**

In determining the validity of special assessments levied against abutting property to pay costs of street improvements, each case must depend on its particular facts.

8. **Municipal corporations ⊂⇒469(1)—Street improvement assessment under front foot rule, substantially equal to benefits received, will be sustained.**

Where a statute authorizes an assessment against adjacent property to pay cost of street improvement according to front foot rule, and property assessed is benefited by the improvement to an extent substantially equal to the amount of the assessment, it will be sustained by the courts.

9. **Municipal corporations ⊂⇒484(1)—Presumption is that municipal assessing body complied with statute in determining benefits.**

Where the Legislature has authorized municipality to improve its streets and assess abutting property benefited for cost thereof, presumption is that assessing body complied with the statute in determining whether adja-

cent property would be benefited to an amount equal to the assessment, and burden rests on one attacking the assessment to show that council did not take into consideration the extent the property would be benefited.

**10. Municipal corporations ⬤=>469(2)—Difference in values and depth of properties does not render void improvement assessments according to frontage (Comp. St. Idaho 1919, § 4000).**

Under Comp. St. Idaho 1919, § 4000, that some of properties are of different values and depth does not of itself render void for inequality street improvement assessments against such properties according to frontage.

**11. Municipal corporations ⬤=>488, 489(5)—Owners failing to avail themselves of opportunity for hearing before council held precluded from attacking improvement assessment in federal court (Comp. St. Idaho 1919, §§ 3828, 3942, 3944, 3999–4013).**

Property owners, having failed to file objections to assessments for street improvements and to avail themselves of opportunity for hearing before city council, granted under Comp. St. Idaho 1919, §§ 3828, 3942, 3944, 3999–4013, were precluded from thereafter asserting invalidity of assessment in federal court.

In Equity. Suit by the Robert Noble Estate, a corporation, and others against Boise City. Decree for defendant.

J. F. Colvin and Johnson & Nixon, all of Boise, Idaho, for plaintiffs.

J. J. McCue and Reddoch & Hunter, all of Boise, Idaho, for defendant.

CAVANAH, District Judge. This is an original suit in equity, brought in this court to determine the validity of certain special local assessments levied by the defendant, Boise City, against the property of plaintiffs fronting or tributary to the streets to be improved in local resurfacing improvement district No. 1 of the city. It seeks an injunction against the enforcement of the liens created by the assessments and the canceling of the bonds issued as a method of meeting the cost of the improvement. The cost of the improvement, except at the intersection of streets, is to be paid by assessments upon the property benefited, and all of the property included within the boundaries of the district and assessed for the improvement are to remain liable for the cost of the improvement until the same are fully paid. The bonds are not to be obligations of the city, although they are issued by it. Their payment is to be by the enforcement of liens levied against the property. The city at large pays that part of the cost of the improvement at the intersections of streets. The proposed improvement was sought to be made under chapter 159, tit. 32, Comp. Stats. of Idaho 1919. This law, by sections 3828, 3944, and 3999 to 4012, inclusive, makes provision for the repairing, rebuilding, and relaying of pavements, payment to be made in the same manner as is provided for in making such improvements in the first instance, and for the establishment of improvement districts and the assessment of the cost of such improvements, except at the intersections of streets, against the lots and lands abutting on or tributary to the improvement to the extent that they will be benefited by reason of the construction of the improvement. The usual provisions are made for the initiation of the creation of the district, the giving of notice, the hearing upon the question of the wisdom of the improvement, and estimate of the cost thereof, and also the benefits it will effect for each landowner. The council and its street committee are to have the aid of the city engineer. The proposed improvement and assessment are to be approved by the council. Full provision is made for hearings, at which all objections to such assessments and benefits shall be determined, and for appeal to a court from such determination. Express authority is conferred upon the city to make the improvement and to provide for the expense thereof, either by levying special assessments against the abutting property or by issuing general obligation bonds of the city, and the city has the option of adopting either one or both of these methods. The Supreme Court of the state has so held. Byrns v. City of Moscow, 21 Idaho, 398, 121 P. 1034.

[1] It is argued for plaintiffs that, under the statutes of the state and the evidence, the assessments were unauthorized, unreasonable, discriminatory, and amounted to the taking of property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States, which presents to this court for determination a question arising under the federal Constitution. The particular provision of the statute authorizing the city to repair the streets and assess the cost thereof, by the levy of special assessments, against the abutting property, is section 3828 of the Comp. Stats. of Idaho, which provides: "To provide for the repairing, rebuilding and relaying of pavement, sidewalk, curb, gutter, sewer, or other improvement, the procedure and manner of payment to be the same as may be provided by law for making such improvements in the first instance." Such statutes are now held, where the necessity to repair the street exists, to violate no constitutional right of the

owners of property so assessed, as long as the benefits continue respectively to equal the individual assessments. Fuchs v. City of Cedar Rapids, 158 Iowa, 392, 139 N. W. 903, 44 L. R. A. (N. S.) 590; Wilkins v. City of Savannah, 152 Ga. 638, 111 S. E. 42; Holswade v. City of Huntington, 96 W. Va. 124, 122 S. E. 449. The principle has been sanctioned recently by the Supreme Court, where a reassessment of property to pay the deficit in the assessments caused by the sale of other property in the district for failure to pay their assessments, which would seem to be a more objectionable instance than requiring the payment of the cost of repairing the street. Kadow et al v. Paul et al. (April 18, 1927) 47 S. Ct. 561, 71 L. Ed. ——. The authorities holding invalid assessments made to defray the cost of repairing a street seem to be based upon statutes that do not grant to the city authority to repair the streets and charge the cost thereof against the abutting property, as the courts were considering statutes merely authorizing the construction of street improvements in the first instance.

[2] The further attack upon the constitutionality of the statute relating to the procedure in making the assessments is that notice to the property owners assessed and an opportunity for a hearing must be provided for when the organization of the district and the assessment of the property are delegated to local officials. The argument is advanced that the statute under which these assessments are made does not give notice to the plaintiffs and an opportunity for a hearing at the time of the organization of the district, and, when the assessment was made thereunder, it was a denial of due process of law under the Fourteenth Amendment and therefore unconstitutional. Under the objection it becomes necessary to analyze the different provisions of the statute in order to ascertain if proper notice and an opportunity of a hearing have been granted to the property owners. Section 3942, Comp. Stats. of Idaho, gives to municipalities the power to improve streets, and section 4003 the power to create special improvement districts, by resolution or ordinance, declaring its intention to make such improvement, and that the cost thereof be assessed against the property abutting or fronting upon or tributary to such street, and fixes a time of not less than ten days in which protests against the proposed improvement may be filed in the office of the city clerk, and it then becomes the duty of the clerk to cause such resolution or ordinance to be published in the official newspaper in at least two consecutive issues before the time fixed in the

resolution for filing protests. Should protests against the proposed improvement by the owners of more than two-thirds of the front feet of lots and lands abutting on the improvement and included in the district be filed, the council shall not proceed further with the work, unless three-fourths of the members of the council shall vote to proceed with the work after considering the same.

"The resolution or ordinance of intention * * * is for the purpose of giving notice to the property owners, who shall be subject to the costs and assessments, of the intention of the council, and the property owners are given the right to protest against the proposed intention of the city council, and the council are given the power to act on the protest and may accept the same, or, by vote of three-fourths * * * of the members * * * reject the same, and proceed further with the work." McEwen v. City of Coeur d'Alene, 23 Idaho, 746, 132 P. 308.

Upon the adoption of the ordinance creating the district, and providing for the payment of the cost of the improvement by the levy of special assessments against abutting property, the committee on streets, together with the city engineer, shall make out an assessment roll according to the provisions of the ordinance and shall certify the same to the council. The roll is then filed with the clerk of the city, who is required to give notice by three successive publications in the official newspaper that such roll is on file in his office, the date of filing the same, and the time at which the council will hear and consider objections to the roll by parties aggrieved by such assessments. Ten days from the last publication is the time given to any owners of property thus assessed within which to file any objections in writing to the assessments. At the time appointed for the hearing of objections, the council shall hear and determine all objections which shall be filed by any interested party, and shall have power to adjourn such hearing from time to time, and, in their discretion, to revise, correct, confirm, or set aside such assessment, and may order that the same be made de novo, and their decision and order shall be a final determination of the regularity, validity, and correctness of the assessment to the amount thereof levied on each lot and parcel of land. An appeal to the district court within ten days is then given to any one who has filed an objection. Comp. Stats. of Idaho, §§ 4004 to 4013.

It would seem clear from these provisions of the statute, prescribing the procedure, that there is granted to the owners of property

ample notice and opportunity to object at a hearing. Notices and hearings before the council are provided for by the statute to those interested in both the formation of the district and objections to the assessments. The ordinances and the record also disclose that an opportunity to object to the assessments was granted to plaintiffs, but they filed no objections thereto. Such being the case, the objection made as to the statute and proceedings not granting to plaintiffs notice and a hearing and the authorities cited do not apply in the present case.

The object of this particular improvement is one of the important questions involved in the present case, as it is contended by the plaintiffs that the improvement is one of more benefit to the general public than the locality through which it passes, and that the cost thereof should be borne by the city at large. The reason given is that South Eighth and Ninth streets in the district are necessary and integral parts of the approach plan to the new Oregon Short Line Station, to the new state highway, to the Morris Hill Cemetery, and the west entrance of Julia Davis Park, and that the improvement of these streets was a much-needed improvement for the purpose of making the approach uniform and suitable. In support of their contention, plaintiffs claim that by ordinances the city attempted to adopt a plan to improve Seventh street from Bannock to the park, and thence south across the river over a new bridge, to be constructed, to the new station, and to provide for a bond issue by the city of $300,000, which was afterwards abandoned. Thereafter another ordinance was approved, providing for an election to authorize the issuance by the city of bonds in the amount of $125,000 for the improvement of Seventh street, extending south to the approach, and that a portion of this fund was to be used for paying the cost of paving street intersections north of the river. This ordinance was rejected by the voters of the city, and the plan of improving Seventh street to connect with the approach was finally abandoned, and it was then decided to utilize the existing bridge on Ninth street and resurface Eighth and Ninth streets within the district. This last plan was finally adopted by the people at an election, and the expenditure of $115,000 by a general bond issue of the city was authorized, for the purpose of paying the cost of the approach and the improvement of the pike on Ninth street south of the river and the intersections of the streets in the district, as we find that the ordinance of the city of date December 3, 1924, authorizing the bond issue of $115,000 and which met with the approval of the voters of the city, provided that the funds derived from a sale of the bonds shall be used to construct the approach to the new station, acquiring and improving the lands necessary thereto, and acquiring right of ways, grading, paving, curbing, lighting, sidewalking, parking of a new street, and widening and paving the pike on Ninth street south of the bridge, and paying the cost of the repairing of the streets at the intersections in the district. This ordinance contemplated that the funds of the bond issue should be expended on the approach and making the improvements as therein stated south of the Ninth street bridge, and at intersections of streets with Eighth and Ninth in the district. This was the proposition submitted to the voters of the city. It would naturally be inferred that, where the ordinance did not cover the cost of the repairing of Eighth and Ninth streets of the district, excepting at intersections, the same would have to be paid by the abutting property. Considerable testimony was given by witnesses, among whom were the mayor and city officials at the time these plans were being considered, to the effect that it was not contemplated that the funds to be derived from the bond issues were to be used north of the park or the river, except for resurfacing of street intersections, as was finally done in the district, and that the amounts of the bond issues were to be consumed in providing for the approach at and near the depot and improving the pike on South Ninth street and intersections of streets north of the park and the river. This evidence is borne out by the ordinances authorizing the $115,000 bond issue and the creation of the district.

[3] This brings us to the consideration of the objection of the plaintiffs, that the repairing or resurfacing of the streets in the district was of greater benefit to the people of the city at large than to plaintiffs' property, by reason of the connection of the streets in the district with the bridge across the river leading to the approach, and that it was the duty of the mayor and council of the city to expend from the general fund of the city such amount as was necessary to pay the cost of the entire improvement in the district, upon the theory that a greater benefit accrued to the general public by reason of such improvement. In support of this contention, attention is called to section 4005 of the Comp. Stats. of Idaho, 1919, wherein it is provided: "That the city council or trustees may expend from the general fund for such purposes such sums as, in their judg-

ment, may be fair and equitable in consideration of the benefits accruing to the general public by reason of such improvement." The interpretation of this statute by plaintiffs is that, although it appears that the improvement in the district is situated north of the river, nevertheless it is an inseparable part of the approach to the new station which is used by the general public in going to and from the depot, and that no part of the burden of defraying the cost of the improvement should be paid by the property owners in the district. I am unable to give to the statute such a construction under the record in the present case, for the statute seems clear in authorizing the council to expend from the general fund of the city for the improvement of city streets "such sums as, in their judgment, may be fair and equitable in consideration of the benefits accruing to the general public by reason of such improvement." Some discretion is granted to the council under the statute, and courts should not, when exercised, set it aside unless it appears that their action was arbitrary and without regard to benefits accruing to the adjacent property by reason of the improvement.

[4] It would seem under the evidence that one is forced to the conclusion that as the city had abondoned and rejected the first and second plans to connect Seventh street by the construction of a new bridge across the river with the approach at the station, and thereafter submitted to the voters the third plan which was adopted, and confining it to the building of the approach and the improvements south of the river outside of the district, and defraying only the cost of the improvement at intersections of streets in the district, the council did not abuse their discretion in creating the district, which includes the repairing and resurfacing of two streets and assessing the cost thereof against the adjacent property. The mere fact that it so happened that these two streets lead to and connect with the bridge across the river, over which it is necessary for the public to travel in order to get to the station from certain parts of the city, and that the voters of the city having authorized the council to construct the approach at the depot and make the improvements on South Ninth street across the river, did not require the council, under this statute, to also pay out of the general fund the entire cost of repairing the streets in the district.

[5] We cannot escape the conclusion that in every improvement made by a city in the nature of paving or repairing of its streets, there exists a double benefit to a certain extent—one to the abutting property owner and one to the general traveling public. As to what extent the one receives a greater benefit than the other depends entirely upon the particular facts, and we are required, in determining that, to take into consideration the character of the improvement, the location and kind of property assessed, and the extent, if any, the improvement would benefit or enhance the value of the adjacent property. The element of use by the general public of an improved street exists in every improved street to a certain extent, and, because it appears that a street is so situated in a business section of the city and is used a great deal by the traveling public in going to and from the depot, a highway coming into the city and a park abutting on the street, would not defeat a special assessment levied against property abutting on the street where the assessment equals the benefits to be derived by the property. It will be remembered that Eighth and Ninth streets in this district were originally improved by the construction of a concrete pavement in 1911, and that the greater portion of the property adjacent thereto is now used in the conducting of wholesale and some retail businesses, having built thereon some valuable improvements and buildings. The only gas plant which supplies the city of Boise with gas, and having a valuable plant and improvements, is situated at the south end of Eighth and Ninth streets. In fact, this district covers the principal wholesale business section of the city, and has not only valuable improvements in the way of buildings but certain railroad facilities. While there are some vacant lots toward the south end of the district, yet one can hardly say that they are suburban properties, situated upon a boulevard and a long distance from the business center of the city, as was the situation in the case of Fidelity National Bank & Trust Co. of Kansas City et al. v. Swope et al. (C. C. A.) 2 F.(2d) 676, relied upon by plaintiffs.

The situation in that case is not analogous to the present case, for the benefited district there was about 7 miles distant from the business center of the city, and consisted of about 250 acres of suburban unimproved and unplatted lands, lying adjacent to the park and between it and the city. The attempt of the city to assess the district with the cost of improving a boulevard some 220 to 500 feet in width, which was used exclusively to go to and from the park by pleasure seekers who visited the park, was held not to come within the Kansas City charter, and was arbitrary and unreasonable. The court, after referring

to the extreme action of the city in assessing property under such conditions, recognized the modern rule to be:

"While such improvements are for public use, the assessment of the cost thereof against the abutting property is not inequitable. In the course of time through continued improvement all abutting property and each owner of abutting property in the community make similar, if not exactly the same proportional, contributions for the public good. Under these conditions the increase in the value of the abutting property and the convenience resulting to the several owners are generally, and as far as humanly practicable, the same. The underlying principle is that the special benefits accruing to the abutting property from the improvements justify the assessments."

[6] Under this objection it is further urged by the plaintiffs that, after the city has defrayed out of city funds the cost of improving the pike on South Ninth street, situated outside of the district, to now require them to pay for the cost of improvement on the streets in front of their property in the district is an unlawful discrimination and in violation of both the due process and equal protection clauses of the Fourteenth Amendment to the federal Constitution. As has been stated, the Legislature of the state has, by statute, granted to the city the option either to charge the cost of the improvement to the adjacent property or pay for the same out of the general fund of the city, and, when such option is exercised by the city, after being authorized by its citizens to expend its general funds in paying the cost of the approach and improving the pike on South Ninth street, outside of the district which connects with the approach, it would not be a discrimination against the plaintiffs' property because the option was also exercised in charging the cost of the improvement against the abutting property in the district, for, should such objection be upheld, the statute authorizing the levy of special assessments against adjacent property could never be invoked where the street to be improved was on a line with a street outside of an improvement district, connecting the approach with the station which was improved by general funds of the city. There is no attempt here to make the property in the district pay for the improvement on South Ninth, across the river, as would have to be the case in order to bring it within one of the objections announced in the case of Fidelity National Bank & Trust Co. v. Swope, supra. The mere fact that about the time the approach was built the council concluded that the pav-

ing of Eighth and Ninth streets in the district was in needed repair, and ordered it repaired by the creation of the district and assessing the cost thereof to the abutting property, although these two streets connect with the present bridge on Ninth street and are used by the traveling public in going to the station and other places, would not defeat the special assessment in controversy under the evidence presented. Philadelphia v. Penn. Salt Mfg. Co., 286 Pa. 1, 132 A. 792; Collins v. Jaicks Co., 279 Mo. 404, 214 S. W. 391.

[7, 8] It is further argued for plaintiffs that the assessments in the district were discriminatory, arbitrary, unjust, inequitable, and violate the principle that assessments must be apportioned in accordance with the benefits received and is not due process of law. It is said that this complaint is particularly pertinent to the present case, for the reason that some of the lots are of little or no value, while others of considerable less area were assessed the same per front foot as the more valuable lots, and that the authorities of the city, in assessing the property, did not take into consideration any benefits whatever to the lots in question, or any damages or benefits which one tract of land would receive over another, and did not consider the value, location, shape or area of the lots. The laws of the state provide that the assessment of the costs and expenses of improving a street shall be assessed to the abutting, contiguous, and tributary lots and lands included in the improvement district, each lot and parcel of land to be separately assessed for the full debt thereof in proportion to the number of feet of such lands and lots fronting thereon, and in proportion to the benefits derived to such property by said improvement sufficient to cover the total cost and expense of the work to the center of the street. Comp. Stats. of Idaho, § 4000. The method of assessing property according to the front foot rule is recognized by the statute when made in proportion to the benefits derived by the property by reason of the improvement. In determining the validity of special assessments levied against abutting property, to pay the cost of street improvements, each case must depend upon its particular facts. The principle seems settled by modern authority that, where a statute authorizes an assessment against adjacent property to pay the cost of street improvement according to the front foot rule, and it appears that the property assessed is benefited by the improvement to an extent substantially equal to the amount of the assessment, it will be sustained by the courts.

[9] At the outset we are confronted with the

established rule that, where the Legislature has conferred power on a municipality to improve its streets and assess the abutting property benefited for its cost, the presumption is that the assessing body complied with the statute when determining whether the adjacent property would be benefited by reason of the improvement equal to the amount of the assessment, and the burden rests upon one who attacks the assessment to show that the council did not take into consideration the extent the property would be benefited. With this thought in mind, one must assume, under the evidence, that both the street committee and the council made investigations as to the locality, size, value, use of lots, and improvements thereon before their final decision was reached as to whether, by reason of the improvement, they would receive a benefit equal to the amount of the assessment. The council is the one who finally levies the assessment, and the street committee and engineer only make up an assessment roll and report it to them for action. I do not recall any evidence showing that the council did not familiarize themselves with the necessary facts going to show to what extent the abutting property would be benefited, and, in the absence of such testimony, I must assume that they at some time became familiar with facts sufficient to convince them that the abutting property would be benefited to the extent of the assessments appearing upon the assessment roll which they finally adopted. The city engineer was called and testified as to the method used by himself and the committee in arriving at the amount of the assessments levied against each lot, and stated that the amount of the base material used to fill up the holes in the pavement was distributed to the lots separately in front of which they appeared, and then he took the total cost of the work and added to it the cost of filling up the holes, and divided the total linear feet by it which gave the amount assessed per front foot. It is evident that the front footage rule was adopted, and each lot assessed accordingly. Those lots in front of which appeared holes in the original pavement were assessed an additional amount according to the cost of repairing and filling such holes.

[10] There seems to be a sharp conflict in the evidence as to whether there exists the elements generally considered in determining the question of benefits. The opinion of real estate dealers vary as to the value of the properties assessed, but it would seem from the weight of the evidence that these properties, some of which have thereon valuable improvements, exceed greatly in value the amounts of the assessments. They are upon two streets which are within a few blocks of the retail business center of the city, and have some railroad facilities which are used in the conducting of their business. Some of the properties are of different values and depth, but that does not of itself render void for inequality assessments against them according to frontage for improvement of the street. Considerable evidence was received showing that at times since the construction of the original pavement it has needed and was repaired, commencing as far back as 1914. Some conflict exists in the testimony upon this issue of fact, which consists of opinions of some of the witnesses given from observation as they traveled over the pavement, and others, such as the city engineer, street commissioner, and contractor who supervised the repair of it, and who seemed to be versed and experienced in laying pavements, and as to the life and durability of the same. Taking the evidence as a whole, I do not feel that I would be justified in saying that this pavement was not in needed repair, as it would seem that it was distintegrating, that there had developed considerable holes therein, and that the surface was worn to a considerable extent. It is asserted by plaintiffs that the repairing of the pavement is an injury to the properties assessed on account of the increased traffic on the improved streets going to and from the station and other points, as their properties are used for wholesale business, and the increased travel upon these streets would interfere with them in their use. After considering the width of these streets, which seem to be 80 feet, and the extent to which they are used by the public, I feel that the owners need not be in fear of their business being obstructed or injured.

[11] The record does not show that, after the assessment roll was by the street committee presented to the council and notice of a hearing thereon given, the plaintiffs ever filed any objections to the assessments appearing upon the roll, nor requested a hearing before the council. Having thus failed to avail themselves of the hearing granted, they cannot now assert invalidity of the assessment. Farncomb et al. v. City and County of Denver, 252 U. S. 7, 40 S. Ct. 271, 64 L. Ed. 424; Kansas City Southern Ry. Co. v. Ogden Levee Dist. (C. C. A.) 15 F.(2d) 637.

As disclosed by the record, I find that the property of plaintiffs is benefited by reason of the repairing and resurfacing of the streets to the extent of the assessments, and

that the assessments are valid liens against the property assessed.

The relief prayed for by the plaintiffs will be denied, and decree to that effect may be entered.